[No. 26033-0-III.   Division Three.   June 9, 2009.]

PACIFIC LAND PARTNERS, LLC, *Appellant*, v. THE DEPARTMENT OF ECOLOGY, *Respondent*.

*Joel C. Merkel*; and *Larry W. Larson* (of *Larson Fowles, PLLC*), for appellant.

*Robert M. McKenna, Attorney General*, and *Bruce L. Turcott* and *Stephen H. North, Assistants*, for respondent.

¶1 BROWN, J. — Paul S. Bernsen, sole owner of Pacific Land Partners, LLC, appeals an order forfeiting his right to divert surface water from the Walla Walla River. In 1995, Mr. Bernsen bought land from the federal government in Walla Walla County at a public auction. Over six years later, the Department of Ecology issued an order relinquishing the water right on Mr. Bernsen's property for failure to beneficially use the right for five successive years. RCW 90.14.180. Ultimately the Pollution Control Hearings Board (Board) affirmed, as did the Walla Walla County Superior Court.

¶2 Mr. Bernsen contends his failure to beneficially use the water right (1) was not voluntary, (2) was excused due to the unavailability of water, and (3) was excused because Mr. Bernsen had a fixed plan for determined future development. In his reply brief, Mr. Bernsen additionally contends the Walla Walla County Superior Court erred in concluding that the water right was relinquished by the federal government during the eight years the government owned the property before Mr. Bernsen bought it.

¶3 We agree with the Walla Walla County Superior Court that the United States government relinquished the water right due to nonuse during its ownership. Even if the federal government did not relinquish the water right, Mr. Bernsen did because his nonuse was not excused. Accordingly, we affirm the decision of the Board as modified by the Walla Walla County Superior Court.

## FACTS

¶4 From 1973 to 1987, Lavern Mickelson owned 200 acres of property in Walla Walla County. Mr. Mickelson irrigated his property until around 1986 under surface water certificate number 11469, with a water diversion intake in the Walla Walla River. In July 1987, the federal Rural Economic and Community Development Agency (RECD) foreclosed on Mr. Mickelson's property. The RECD then bought the property and its appurtenant water right

in a foreclosure sale in October 1987. In April of the next year, the RECD removed the irrigation equipment from the property.

¶5 In 1995, the RECD offered the property to the public at auction, listing it as a dry land farm. Mr. Bernsen, who has owned and irrigated various properties for over 50 years, became interested in the Mickelson land. Two weeks before the auction, he dived into the Walla Walla River and examined the intake for the old irrigation system. He found it to be buried in silt. He also contacted Ecology and asked about the status of the water right. In response, James Lyerla of Ecology sent Mr. Bernsen a memo in March 1995 that said the water right previously associated with the land had been cancelled for nonuse.

¶6 Mr. Bernsen posted Mr. Lyerla's memo at the March 28, 1995 sale attended by around 100 people. He successfully bid $112,000 for the property, putting 10 percent down as required by the agreement.[1] The terms of the sales agreement included acknowledgements that the water right had probably lapsed:

> Buyer acknowledges that there were reportedly water rights for 200 acres, however these rights have expired due to non-use. Buyer further acknowledges that the pipeline easement with the Army Corps of Engineers has lapsed; therefore the property is being offered as dry land.
>
> . . . .
>
> Buyer acknowledges that any Certificate of Water Right which did exist may no longer be valid due to non-use.

1 Administrative Record (AR) Doc. 7, at 2.

¶7 Mr. Bernsen believed certain statutory exceptions under RCW 90.14.140 may have applied to prevent relinquishment of the water right. In particular, he thought that nonuse would be excused if it had resulted from the "operation of legal proceedings" such as, possibly, foreclo-

---

[1] Mr. Bernsen submitted his bid in the name of Warm Wind Development Company.

sure. RCW 90.14.140(1)(d). After he made his bid, he contacted Ecology and asked about the legal proceedings exception. The Ecology water resources director told Mr. Bernsen that if he substantiated a history of ongoing litigation regarding the foreclosure, that would be a sufficient cause for nonuse.

¶8 Mr. Bernsen amassed documents showing the federal foreclosure procedures. As a result, Ecology sent Mr. Bernsen a letter dated May 2, 1995 stating that it appeared that the property had been "in various stages of litigation" until Mr. Bernsen bought it on March 28, 1995. 1 AR Doc. 5, Ex. 1. Noting that no relinquishment proceedings had been initiated against the water right, Ecology concluded that the five years of nonuse under the relinquishment statute started running as of the date Mr. Bernsen purchased the property "and it would be advisable to bring this property into full irrigation within the next 5 years." 1 AR Doc. 5, Ex. 1. Mr. Bernsen claims he would not have made the balance payment in June 1995 if he had not gotten the May 1995 letter from Ecology. He also admits he has never beneficially used the water right.

¶9 In December 2000, Mr. Bernsen applied to Ecology to change the diversion point for water certificate 11469 from the river to groundwater wells and to change the purpose of the water right to a temporary trust for three years. He intended to remove the water right from the trust for irrigation purposes after three years. Ecology investigated the change application and issued a report finding that the water right had not been put to beneficial use since 1983. It also found that Mr. Bernsen had not shown that any exception applied to bar relinquishment for five years of nonuse. Based on this report, Ecology denied Mr. Bernsen's change application and issued an order of relinquishment on February 1, 2002.

¶10 In March 2002, Mr. Bernsen appealed Ecology's orders to the Board, which granted Ecology's motion for summary judgment in October 2002. Mr. Bernsen then filed a petition for review with the Grant County Superior Court.

In October 2003, the Grant County Superior Court reversed the Board's summary judgment order and remanded for a hearing on whether Mr. Bernsen could prove sufficient cause for nonuse of the water right. The court ordered the Board on remand to enter a conclusion that the federal foreclosure proceedings prevented beneficial use of the water right from 1986 through May 1995, excusing nonuse during that period.

¶11 After a hearing, the Board entered final findings of fact, conclusions of law, and an order on May 9, 2005. As directed by the Grant County Superior Court, the Board concluded, "for purposes of this case that the U.S. Government foreclosure proceeding did prevent use of the water right and is sufficient cause for nonuse under RCW 90.14-.140(1)(d) for the time period 1986 through May 1995." 2 AR Doc. 6, at 14. Even so, the Board affirmed Ecology's order relinquishing Mr. Bernsen's water right certificate. It concluded that Mr. Bernsen did not beneficially use his water right under certificate 11469 within five years of his acquisition of the right in May 1995. The Board found that he had not proved that his nonuse was excused.

¶12 After a March 2007 hearing on consolidated cross-petitions for review, the Walla Walla County Superior Court reversed the Board's conclusion of law that the federal foreclosure proceedings were sufficient cause to excuse nonuse of the water right from 1986 through May 1995. The superior court affirmed all other issues. Mr. Bernsen appealed.

## ANALYSIS

### A. Relinquishment during Federal Ownership

¶13 The issue is whether the water right appurtenant to the Mickelson property was relinquished due to nonuse before Mr. Bernsen bought the property.

¶14 We review the Board's order under the Administrative Procedure Act, chapter 34.05 RCW, applying the

standards of RCW 34.05.570(3) directly to the record before the Board. *Pub. Util. Dist. No. 1 of Pend Oreille County v. Dep't of Ecology*, 146 Wn.2d 778, 789-90, 51 P.3d 744 (2002). We consider only the evidence, findings, and conclusions in the agency record and grant relief "when the agency's interpretation or application of the law is erroneous, the order is not supported by substantial evidence, or the order is arbitrary or capricious." *Id.* at 790 (citing RCW 34.05-.570(3)(d), (e), (i)); *Motley-Motley, Inc. v. Pollution Control Hearings Bd.*, 127 Wn. App. 62, 72, 110 P.3d 812 (2005). The Board's legal conclusions are reviewed de novo, "giving substantial weight to the Board's interpretation of the statute it administers." *King County v. Cent. Puget Sound Growth Mgmt. Hearings Bd.*, 142 Wn.2d 543, 553, 14 P.3d 133 (2000); *see also Port of Seattle v. Pollution Control Hearings Bd.*, 151 Wn.2d 568, 593, 90 P.3d 659 (2004) (Ecology's interpretation of relevant statutes and regulations is entitled to great weight.).

¶15 As the party challenging the Board's order, Mr. Bernsen carries the burden of showing that the Board's action was invalid. *Bowers v. Pollution Control Hearings Bd.*, 103 Wn. App. 587, 595, 13 P.3d 1076 (2000) (citing RCW 34.05.570(1)(a)). Ecology contends Mr. Bernsen waived any argument that the conclusion on the operation of legal proceedings should be affirmed because he did not assign error to the superior court's actions in his opening brief. RAP 10.3(a)(4). We adhere to our commissioner's ruling that the interests of justice outweighed any inconvenience to Ecology. Commissioner's Ruling, *Pac. Land Partners, LLC v. Dep't of Ecology*, No. 26033-0-III at 2 (Wash. Ct. App. Oct. 9, 2008) (citing RAP 10.3(h)). The issue is therefore properly before this court.

¶16 Under RCW 90.14.180, a person who holds a water right and who voluntarily fails, without sufficient cause, to beneficially use all or a portion of the right for five successive years will relinquish all or a portion of the right. *R.D. Merrill Co. v. Pollution Control Hearings Bd.*, 137 Wn.2d 118, 139, 969 P.2d 458 (1999); *Motley-Motley*, 127

Wn. App. at 75. "Person," as used in the statute, includes "the United States of America when claiming water rights established under the laws of the state of Washington." RCW 90.14.031(1). A "beneficial use" includes irrigation, recreation, and other uses. RCW 90.14.031(2). Nonuse of the water right may be excused under RCW 90.14.140 for sufficient cause, including the unavailability of water (RCW 90.14.140(1)(a)) and the operation of legal proceedings (RCW 90.14.140(1)(d)). Additionally, no relinquishment will be found if the water right is claimed for a determined future development to take place within 15 years of the most recent beneficial use. RCW 90.14.140(2)(c).

¶17 Mr. Bernsen's argument against relinquishment of the water right during the RECD's ownership of the property takes three forms. He contends (1) Ecology is estopped to deny that the foreclosure proceedings excused nonuse of the water right, (2) the RECD's nonuse of the water right was excused by the operation of the foreclosure proceedings, and (3) federal sovereign immunity and preemption laws preclude state action against the RECD's water right.

¶18  1. Equitable estoppel. Mr. Bernsen contends Ecology is estopped to deny that the RECD's interest was relinquished due to nonuse. Equitable estoppel applies when a party has made an admission, statement, or act that was justifiably relied upon to the detriment of another party. *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 19, 43 P.3d 4 (2002). Because equitable estoppel against the government is not favored, application of the doctrine must be necessary to prevent a manifest injustice and must not impair government functions. *Id.* at 20.

¶19  Mr. Bernsen contends Ecology advised him that the RECD's foreclosure proceeding was an ongoing legal proceeding that excused nonuse of the water right from 1986 to 1995. He argues he would not have paid the balance on the property if he had not relied on Ecology's statements. Ecology's opinion regarding application of the legal proceedings exception—which was based on evidence presented by Mr. Bernsen—involved a legal conclusion, rather than an

issue of fact. Equitable estoppel does not apply to statements that are issues of law, even when the statement of law is incorrect. *Id.* at 20-21; *Dep't of Ecology v. Theodoratus*, 135 Wn.2d 582, 599-600, 957 P.2d 1241 (1998). Ecology is not estopped from arguing that the water right was relinquished before Mr. Bernsen bought the property.

¶20 2. Excuse for nonuse due to the operation of legal proceedings. In its order of relinquishment, Ecology found water certificate 11469 had not been put to beneficial use since 1983. The Board in its 2002 summary judgment order adopted Mr. Bernsen's assertion that the last irrigation date on the property was 1986. Further finding that the RECD removed the irrigation equipment and did not beneficially use the water right for over five successive years, the Board concluded the RECD's federal foreclosure process did not prevent the beneficial use. The Grant County Superior Court reversed, ordering the Board on remand to enter a conclusion that the federal foreclosure proceedings prevented beneficial use from 1986 through May 1995.

¶21 The Board's 2005 order reluctantly included the conclusion that the operation of legal proceedings excused nonuse of the water right until Mr. Bernsen bought the Mickelson property from the RECD. In a footnote, the Board added that "[t]he Board is entering this conclusion as directed by the Grant County Superior Court, despite the apparent inconsistency with the Washington Supreme Court's analysis of the legal proceedings exception to relinquishment contained in *R.D. Merrill Co. v. Pollution Control Hearings Board*, 137 Wn.2d 118, 141-42, 969 P.2d 458 (1999)." 2 AR Doc. 6, at 14 n.1. The Walla Walla County Superior Court reversed solely the Board's conclusion that the federal government had not forfeited the water rights due to nonuse.

¶22 The *R.D. Merrill* court addressed a developer's applications for changes in water rights needed to provide water to a ski resort. 137 Wn.2d at 123. Ecology approved three of the five applications and denied two for

nonuse. *Id.* On appeal, the developer argued that litigation involving the ability to develop a ski area on adjacent federal land interfered with its development plans, thus preventing beneficial use of the water rights. *Id.* at 141. The court held the narrowly-defined legal proceedings exception requires a showing that the legal proceedings actually prevented the use of the water. *Id.* at 141-42; RCW 90.14-.140(1)(d). The mere fact that legal proceedings delayed the development plans did not, in itself, justify application of the exception. *R.D. Merrill,* 137 Wn.2d at 141. In order for the exception to apply, the legal proceedings must prevent beneficial use of the water for any purpose. *Id.* at 142. Because the Board applied the wrong nonuse standard, the Supreme Court remanded for further factual findings on this question. *Id.*

¶23 Mr. Bernsen carried the burden of showing that the legal proceedings exception excused nonuse of the Mickelson property water right from 1986 through May 1995. *Id.* at 140. While the foreclosure proceedings may have prevented Mr. Mickelson from using the water right for irrigation, the foreclosure proceedings did not in themselves prevent all beneficial use of the water right after the RECD bought the property in 1987. The RECD chose to remove the irrigation equipment rather than to continue that beneficial use. Mr. Bernsen does not show how foreclosure prevented *any* beneficial use of the water right. He does not provide evidence that the RECD was restrained by the foreclosure legal proceedings from using the water right for any purpose. *See id.* at 141-42.

¶24 The Board concluded in 2002 that the operation of legal proceedings did not excuse nonuse of the water right from 1986 through May 1995. This conclusion is compatible with the legislative intent to narrowly interpret the exceptions of RCW 90.14.140. *Id.* at 140. As stated in RCW 90.14.020(3), the requirement that a person establish a strong beneficial use as a condition precedent to continued ownership of a water right "is essential to the orderly development of the state." *Id.* The legislature intended

"that water be beneficially used, and, if not, that water rights be returned to the state so that the water will be available for appropriation by others who will put the water to beneficial use." *Id.* Water certificate 11469 was not beneficially used for nearly nine years before Mr. Bernsen bought the property appurtenant to that water right. He does not show that federal forfeiture proceedings prevented any beneficial use of that water right, for irrigation or any other reason.

¶25 We may affirm the Board's 2005 order on any basis established by the pleadings and supported by the record. *Truck Ins. Exch. v. Vanport Homes, Inc.*, 147 Wn.2d 751, 766, 58 P.3d 276 (2002). Although the Board was ordered to enter a conclusion of law that the federal foreclosure proceedings prevented use of the water and justified nonuse under RCW 90.14.140(1)(d), we, like the Walla Walla County Superior Court, reverse this conclusion and affirm the Board's order forfeiting the water right on the basis that the right was not beneficially used from 1986 through May 1995.

¶26 3. <u>Federal immunity and preemption.</u> After the Board entered the 2005 order, Mr. Bernsen raised new federal issues on appeal to the Walla Walla County Superior Court. He argued that sovereign immunity precludes adjudication of water rights owned by the federal government, citing the Quiet Title Act (28 U.S.C. § 2409a)[2] and the McCarran Amendment (43 U.S.C. § 666).[3] He also cited the supremacy clause (U.S. Const. art. VI, § 2),[4] the property

---

[2] The Quiet Title Act waives the sovereign immunity of the federal government as a party defendant in a civil action to adjudicate a disputed title to real property other than water rights. 28 U.S.C. § 2409a(a).

[3] The McCarran Amendment allows a state to bring suit against the United States in a comprehensive water right adjudication. 43 U.S.C. § 666; *United States v. Idaho ex rel. Dir. Idaho Dep't of Water Res.*, 508 U.S. 1, 3, 113 S. Ct. 1893, 123 L. Ed. 2d 563 (1993). The act does not waive sovereign immunity for individual private litigants to sue the federal government in a quiet title action to water rights. *Duval Ranching Co. v. Glickman*, 965 F. Supp. 1427, 1444 (D. Nev. 1997).

[4] The supremacy clause prevents states from regulating projects over which the federal court has jurisdiction or control. U.S. Const. art. VI, § 2; *Lyda v. Port of Walla Walla*, 9 Wn. App. 115, 120, 510 P.2d 1172 (1973).

clause (U.S. CONST. art. IV, § 3, cl. 2),[5] and the Consolidated Farm and Rural Development Act (7 U.S.C. § 1981(c))[6] as preempting application of Washington's water rights relinquishment statutes against a federal agency.

¶27 We cannot review an issue that was not raised before the Board unless (1) Mr. Bernsen did not know and had no duty to discover facts giving rise to the issue, (2) Mr. Bernsen did not have an opportunity to raise the issue before the Board, or (3) the issue arose from a change in controlling law or a change in agency action and the interests of justice require its resolution. RCW 34.05-.554(1)(a)-(d); *King County v. Wash. State Boundary Review Bd.*, 122 Wn.2d 648, 668, 860 P.2d 1024 (1993); *Motley-Motley*, 127 Wn. App. at 72-73.

¶28 As stated in *King County*, 122 Wn.2d at 668, requiring resolution of an issue at the Board level is more than "simply a technical rule of appellate procedure; instead, it serves an important policy purpose in protecting the integrity of administrative decision making." To be properly raised, an issue must be more than slightly referenced in the Board record. *Id.* at 670. Mr. Bernsen did not raise the sovereign immunity or federal preemption issues before the Board and he does not meet any of the exceptions to the rule found in RCW 34.05.554(1). He had access to all the facts that would give rise to these issues, had multiple opportunities to bring them to the Board, and does not contend changes in the law or agency action caused the issues to arise after the Board's decisions. We are therefore precluded by RCW 34.05.554 from addressing these issues on appeal. *Id.* at 668.

¶29 In sum, we conclude the water right was relinquished due to nonuse during the period it was owned by

[5] The property clause permits federal regulation of federal lands and encompasses water rights. U.S. CONST. art. IV, § 3; *Cappaert v. United States*, 426 U.S. 128, 138, 96 S. Ct. 2062, 48 L. Ed. 2d 523 (1976).

[6] Under the Consolidated Farm and Rural Development Act, the federal government provides credit services to farmers with financial difficulties. 7 U.S.C. §§ 1921-1992; *United States v. Ellis*, 714 F.2d 953, 955-56 (9th Cir. 1983).

the RECD. Even if it was not relinquished by May 1995, as next analyzed, Mr. Bernsen's failure to beneficially use the water right during the first five years of his ownership is fatal to his claims.

## B. Relinquishment during Mr. Bernsen's Ownership

¶30 The issue is whether the Board was required to enter a finding that Mr. Bernsen's nonuse of the water right was voluntary. RCW 90.14.180 states that any person who is entitled to divert water under a water right certificate shall relinquish that right if he or she "voluntarily fails, without sufficient cause, to beneficially use all or any part of said right" for five successive years. Mr. Bernsen contends the Board never found—and Ecology never proved—that he *voluntarily* failed to beneficially use his water right. Without a finding that his nonuse was voluntary, he argues, the burden of proof never shifted to him to prove that he had sufficient cause for nonuse.

¶31 "Voluntarily" is not defined in the statute. Consequently, this court will give the word its ordinary and usual meaning as found in a dictionary. *In re Marriage of Blickenstaff*, 71 Wn. App. 489, 493, 859 P.2d 646 (1993). The ordinary and usual meaning of "voluntarily," as defined in *Webster's Third New International Dictionary* 2564 (1993), is "in a voluntary manner : of one's own free will." "Voluntary" is defined in part in the same dictionary as "proceeding from the will : produced in or by an act of choice" and as "done by design or intention : not accidental." *Id. Black's Law Dictionary* 1605 (8th ed. 2004) defines "voluntarily" as "[i]ntentionally; without coercion."

¶32 Mr. Bernsen contends his nonuse of the water right was involuntary from March 1995 to March 1998 because the water intakes in the Walla Walla River were buried in silt; all the irrigation equipment had been removed; the pipeline easement had lapsed; he could not have set up irrigation in time for the 1996 crop year; and financial obstacles forced him to seek alternative sources for his

water, such as new wells. He argues that the date his five years of voluntary nonuse should begin is around March 1998.

¶33 No case has interpreted the language of RCW 90.14.180 the way Mr. Bernsen urges here. The cases that discuss voluntary nonuse of water rights under the relinquishment statutes set out the burdens of proof as follows: first Ecology must prove the lack of beneficial use for five successive years, then the burden of proof shifts to the property owner to show that the nonuse fits within at least one of the narrow statutory exceptions. *See, e.g., Dep't of Ecology v. Acquavella*, 131 Wn.2d 746, 758, 935 P.2d 595 (1997); *Motley-Motley*, 127 Wn. App. at 75. In effect, the language "voluntarily fails, without sufficient cause, to beneficially use" (RCW 90.14.180) has been interpreted to mean something like "fails to beneficially use a known water right, unless this failure is excused under a statutorily recognized exception."[7]

¶34 As noted in *R.D. Merrill*, 137 Wn.2d at 133 n.7, the relinquishment statutes "define five years of nonuse as the *voluntary* failure to beneficially use the water right." Relinquishment is precluded if one of the enumerated exceptions in RCW 90.14.140 prevented beneficial use up to the end of the five-year period. This interpretation accords with the purpose of the relinquishment statutes: to return to the state any water rights that are no longer used and to make them available to others who will put them to beneficial use. *Id.* at 140. Whether or not Mr. Bernsen's nonuse from March 1995 to March 1998 was against his will, it was not accidental. The directive from the legislature is that his right must be forfeited unless he qualifies for one of the narrowly defined exceptions. *Id.* Mr. Bernsen argues two exceptions apply.

---

[7] Evidence of *intentional* relinquishment of a water right is necessary to prove abandonment, a much more difficult standard of proof. *Pub. Util. Dist. No. 1 of Pend Oreille County*, 146 Wn.2d at 799. "Nonuse alone does not constitute abandonment." *Id.*

¶35 First, RCW 90.14.180 states that a person who voluntarily fails "without sufficient cause" to beneficially use a water right for five successive years relinquishes that water right to the State. "Sufficient cause" is defined in RCW 90.14.140(1) as "the nonuse of all or a portion of the water by the owner of a water right for a period of five or more consecutive years where such nonuse occurs as a result of" narrow enumerated reasons. One of those reasons is "[d]rought, or other unavailability of water." RCW 90.14.140(1)(a). The sole Washington case to discuss the exception for water unavailability is *R.D. Merrill*, 137 Wn.2d at 133 n.7, which in dicta notes that a hydrologic or engineering difficulty such as a well running dry may excuse the failure to beneficially use a water right during the statutory period.

¶36 The Board set out Mr. Bernsen's efforts to explore groundwater wells as an alternative source for his water right, including the drilling of test wells and the commissioning of a hydraulic continuity study. The Board found that Mr. Mickelson managed to irrigate his property like many Walla Walla River irrigators, using various tactics such as siltation ponds and special pumps. These findings are supported by substantial evidence in the record. The evidence shows that despite the siltation, Mr. Bernsen's diversion site on the river (the backwaters of the McNary Pool) is very desirable because water availability does not fluctuate there.

¶37 Even though Mr. Bernsen's use of the water right may require work, permitting, and easements, the evidence supports the Board's findings that an irrigation system could have been operable within about six months at a cost of less than $10,000. Indeed, Mr. Bernsen testified he can irrigate wild land in six or seven months if he has a valid water right. Yet, well after five years had passed from the time he bought the property, he still had not installed irrigation.

¶38 Apparently based on a tolling theory, Mr. Bernsen contends his five-year period began in March 1998—the

earliest date he asserts he could have irrigated using a well. But the question is whether water was unavailable due to hydrologic, engineering, or other external reasons throughout the five-year period. *Id.*; RCW 90.14.180. Mr. Bernsen failed to show that he could not have beneficially used his water right within five years after he bought the property. The Board's findings are supported by the record and support its conclusion that the unavailability of water exception to nonuse does not apply here.

¶39 Second, we examine whether the Board erred in concluding Mr. Bernsen failed to prove he had a "determined future development" that excused nonuse of his water right under RCW 90.14.140(2)(c). The provision states that a water right shall not be relinquished "[i]f such right is claimed for a determined future development to take place either within fifteen years of July 1, 1967, or the most recent beneficial use of the water right, whichever date is later." RCW 90.14.140(2)(c).

¶40 The phrase "determined future development" is not defined in the statute. In *R.D. Merrill*, 137 Wn.2d at 142-43, the Washington Supreme Court approved a Board interpretation that accords with the dictionary definition of the phrase: a "determined future development" is a firm, fixed, definitive development plan. The plan for this future development must be fixed prior to the end of the five-year period of nonuse. *Id.* And the development plan must be implemented within 15 years after the last beneficial use. *Id.* at 145; RCW 90.14.140(2)(c). Once a fixed development plan is established (before the end of the five-year period of nonuse), the water right holder must take some affirmative steps toward realization of the plan within the 15-year period. *R.D. Merrill*, 137 Wn.2d at 146. Factors indicating affirmative steps include applying for necessary permits, notifying Ecology of the plan, and conducting physical development consistent with the plan, such as clearing the land and acquiring additional lands, rights, or materials that are needed. *Id.*

¶41 Mr. Bernsen provided evidence that he spent at least $100,000 for future development of the property for pivot irrigation, including such steps as clearing the land, preparing trenches for irrigation lines and pivot points, installing electrical power, buying additional lands and water rights, digging new wells, and establishing hydraulic continuity between the wells and the river. He drilled test wells in 1996 and 1997, but he did not apply to change the diversion from the river to a well until December 2000. In the meantime, he pursued a plan to combine his land with a neighbor's (the Hindman property) and, in 1999, obtained a design and bid for pivot irrigation for the combined properties. Although the project reached the financing stage in February 2000, it was delayed and never completed.

¶42 The land-clearing, trench-digging, and electrical placement occurred in the spring of 2000, not long before the five-year deadline in May 2000. During this time, Mr. Bernsen was negotiating a lease with a potato farmer. Before the lease was finalized, however, problems arose with the owner of the Hindman property that interfered with the pivot irrigation. The potato farmer pulled out of the lease. Soon afterward, the five-year period of nonuse ended.

¶43 Mr. Bernsen failed to show he had settled upon a single, fixed plan for pivot irrigation before May 2000. As the record shows, Mr. Bernsen pursued multiple plans for the property and for sale of the water right during and after the five-year period of nonuse. After he drilled test wells in 1996 and 1997, he attempted to sell his water right to the Port of Walla Walla. Although he again took steps to develop pivot irrigation in 1999 and in early 2000, he did not actually file an application to blend his water right with the Hindman property water right. Here, the record suggests Mr. Bernsen was still investigating whether development of pivot irrigation was feasible. Thus, his plan was still in the preliminary stages and was not fixed. *See id.* at 143-44.

¶44 Moreover, Mr. Bernsen's actions after May 2000 undercut the finality of the plan. In late 2000 through the early 2000s, he pursued leasing the water right to Ecology and selling it to or exchanging it with the Port of Walla Walla. He entered into negotiations with the Fluor Daniel Company in May 2001 for sale of the land and appurtenant water right. In July 2001, he reported to Ecology that he was selling the bulk of his water right to AES, Columbia, Inc., for construction of a power plant.[8] As stated in the Board's conclusions of law, "All of these sale transactions were inconsistent with a fixed and determined plan to use the water right for irrigated agriculture." 2 AR Doc. 6, at 21.

¶45 Recognizing that the Board's application of the law to these facts must be given substantial weight, *King County*, 142 Wn.2d at 553, we agree with the Board's conclusion that Mr. Bernsen's actions were not consistent with a firm, fixed plan for pivot irrigation. Accordingly, the "determined future development" exception to relinquishment for nonuse does not apply. RCW 90.14.140(2)(c).

## C. Attorney Fees

¶46 In a separate section of his appellant's brief, Mr. Bernsen seeks attorney fees under RCW 90.14.190. The statute allows attorney fees when Ecology arbitrarily, capriciously, or erroneously injures a party. RCW 90.14.190; *Okanogan Wilderness League, Inc. v. Town of Twisp*, 133 Wn.2d 769, 786, 947 P.2d 732 (1997); *Rettkowski v. Dep't of Ecology*, 128 Wn.2d 508, 518, 910 P.2d 462 (1996). Because Mr. Bernsen is not successful on appeal, he is not entitled to attorney fees under RCW 90.14.190.

¶47 The decision of the Board as modified by the Walla Walla County Superior Court is affirmed.

SWEENEY and KORSMO, JJ., concur.

Review denied at 167 Wn.2d 1007 (2009).

---

[8] Mr. Bernsen offered to donate the land to Ecology as a public service while transferring the water right separately to AES.