**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

**DIVISION II**

| | |
|---|---|
| In the Matter of L.S., a vulnerable adult: | No. 57027-1-II |
| ZIPPORAH MAINA, | |
| Respondent, | UNPUBLISHED OPINION |
| v. | |
| WASHINGTON STATE DEPARTMENT OF SOCIAL AND HEALTH SERVICES, | |
| Appellant. | |

CHE, J.—Zipporah Maina began working at Linden Grove Health Care Center (Linden Grove), a skilled nursing center, in July 2018. Linden Grove trained Maina how to use mechanical lifts to conduct safe patient transfers from sitting to standing and from one place to another. Linden Grove had a policy requiring two caregivers to be present to use a sit to stand lift—a form of a mechanical lift.

In September, Maina transferred a patient using a mechanical lift without assistance. Linden Grove reprimanded her and provided additional training regarding safe use of the mechanical lifts. In October, LS—a patient at Linden Grove—requested to be taken to the bathroom. Maina told him to wait while she searched for another person to help with the transfer. LS requested a transfer again after five minutes. Maina returned and used a sit to stand lift without assistance, resulting in a laceration to LS's finger.

No. 57027-1-II

The Washington Department of Social and Health Services (DSHS) investigated the incident and made an initial finding of neglect under the Abuse of Vulnerable Adults Act.[1] An administrative law judge (ALJ) entered an initial order concluding that Maina neglected LS. DSHS's Board of Appeals (Board) entered its final order, affirming that determination. The Pierce County Superior Court reversed.

DSHS appeals. Maina argues that (1) the finding of neglect was not supported by substantial evidence; (2) the finding was arbitrary and capricious; (3) the Board's order was based on various incorrect interpretations and applications of the law; (4) she was immunized from a finding of neglect because she was compelled to ensure LS's rights were considered under RCW 70.129.140; and (5) she is entitled to attorney fees under the equal access to justice act (EAJA).[2]

We hold that (1) the Board incorrectly applied the law by determining that two unrelated incidents of a policy violation regarding different patients constituted a "pattern" under former RCW 74.34.020(16)(a); (2) the Board incorrectly applied the law by applying the child neglect standard in *Brown* to the neglect of a vulnerable adult;[3] and (3) the determination that Maina's act demonstrated a serious disregard of consequences of such a magnitude as to constitute a clear and present danger to LS's health, welfare, or safety is not supported by substantial evidence. We deny Maina's request for attorney fees. Lastly, Maina's other arguments are unavailing.

Consequently, we affirm the superior court order reversing the Board's final order.

---

[1] The Abuse of Vulnerable Adults Act is codified in Chapter 74.34 RCW.

[2] The EAJA is codified at RCW 4.84.340, .350, and .360.

[3] *Brown v. Dep't of Soc. & Health Servs.*, 190 Wn. App. 572, 590, 360 P.3d 875 (2015).

FACTS

Maina began working as a certified nursing assistant at Linden Grove in July 2018.

Shortly thereafter, Maina signed a document containing the following statement:

> This facility is a "NO LIFT" facility and all our transfers are mechanical lift, slide board assist, transfer pole assist, or 1 assist pivot. All transfers not using [a] mechanical lift should have a gait belt in use.
>
> I have been instructed by another staff member and I am comfortable with mechanical lifts and transferring res[i]d[ents], and can demonstrate safe and appropriate transfers.

Clerk's papers (CP) at 23. Linden Grove trained Maina on how to conduct safe transfers. Linden Grove assessed patients to determine which equipment was needed for transferring patients. To that end, Linden Grove had a policy that required two people to conduct a patient transfer using a sit to stand lift for safety reasons. Additionally, that policy also required the use of a "gait belt" for certain patient transfers.

In September 2018, Maina violated the aforementioned policy by transferring a patient on a mechanical lift without assistance and without using a gait belt. The patient fell but was not injured as a result of Maina's conduct. Linden Grove reprimanded her. Maina signed an Individual Performance Improvement Plan after the incident and received training on how to properly use the mechanical lifts.

On October 2, 2018, patient LS requested a transfer to the bathroom. LS was required to be transferred using a mechanical lift. Maina told him to wait while she searched for assistance. Maina testified that she asked two or three nursing assistants for help, but could not remember their names. More generally, Maina testified that there were three or four staff members at

Linden Grove who could have helped her that evening, and that she was responsible for between ten to fourteen patients.

After Maina spent five minutes attempting to look for help, LS requested assistance again. Maina returned and put LS on a sit to stand lift without assistance. As Maina turned LS on the lift, his hand got caught in between a window ledge and part of the lift, resulting in a deep laceration on his pinky finger. Linden Grove terminated Maina's employment that day.

Adult Protective Services (APS)—a division of DSHS—received a report that month about the incident and began to investigate. APS made an initial finding of neglect under former RCW 74.34.020(16) (2018), *amended by* LAWS OF 2020, ch. 312, § 735 (moving the definition of "neglect" from subsection sixteen to fifteen). Maina requested a hearing to dispute that determination.

After a hearing, an ALJ entered an initial order, concluding that Maina neglected LS, a vulnerable adult. Maina filed a Petition for Review of Initial Decision. The Board entered its Review Decision and Final Order, affirming the initial order. It concluded that Maina engaged in neglect, both through a pattern of conduct and through a single egregious incident under former RCW 74.34.020(16)(a) and (b).

Mania petitioned for reconsideration of the review decision. The Board denied the request for reconsideration and adopted the review decision as the final administrative order. Maina appealed to the Pierce County Superior Court. The superior court reversed the Board's determination.

DSHS appeals.

## ANALYSIS

### I. LEGAL PRINCIPLES

We review this case under the Administrative Procedure Act, codified in chapter 34.05 RCW. This appeal came before us through a petition for judicial review of a final agency action under RCW 34.05.570(3). We may grant relief from a final agency action—the Board's final order—only on the bases in RCW 34.05.570(3). Of the nine bases for relief, at issue here, we may grant relief if "(d) The agency has erroneously interpreted or applied the law; (e) The order is not supported by evidence that is substantial . . .; [or] (i) The order is arbitrary or capricious." RCW 34.05.570(3). We apply chapter 34.05 RCW directly to the agency's record—without consideration of the superior court's decision. *Karanjah v. Dep't of Soc. & Health Servs.*, 199 Wn. App. 903, 914, 401 P.3d 381 (2017). Our review is limited to the record that was before the agency. RCW 34.05.558.

The party asserting the invalidity of the agency action bears the burden of showing the aforementioned criteria exist in this case. RCW 34.05.570(1)(a). We review legal determinations de novo, but "we give 'substantial weight to the agency's interpretation of the law it administers, particularly where the issue falls within the agency's expertise.'" *Karanjah*, 199 Wn. App. at 914 (quoting *Goldsmith v. Dep't of Soc. & Health Servs.*, 169 Wn. App. 573, 584, 280 P.3d 1173 (2012)). "[T]he decision must be supported by a sufficient quantity of evidence to persuade a fair-minded person of the truth or correctness of the order." *Callecod v. Wash. State Patrol*, 84 Wn. App. 663, 673, 929 P.2d 510 (1997) (citing RCW 34.05.570(3)(e)).

We review findings of fact for substantial evidence, but "[w]e do not weigh witness credibility or substitute our judgment for the agency's findings of fact." *Goldsmith*, 169 Wn.

5

App. at 584. "Unchallenged findings are verities on appeal."[4] *Robel v. Roundup Corp.*, 148 Wn.2d 35, 42, 59 P.3d 611 (2002).

Under the Abuse of Vulnerable Adults Act, neglect may occur in two ways under former RCW 74.34.020(16). Neglect may occur when a person with a duty of care engages in a pattern of conduct or inaction that "fails to avoid or prevent physical or mental harm or pain to a vulnerable adult." Former RCW 74.34.020(16)(a). Alternatively, neglect may occur when a person with a duty of care engages in an act or omission "that demonstrates a serious disregard of consequences of such a magnitude as to constitute a clear and present danger to the vulnerable adult's health, welfare, or safety, including but not limited to conduct prohibited under RCW 9A.42.100." Former RCW 74.34.020(16)(b).

## II. REVIEW OF THE BOARD'S DECISION

### A. *Arbitrary and Capricious*

Maina appears to argue that the Board's order is arbitrary and capricious because the Board "failed to examine the facts and circumstances regarding the Respondent's actions." Br. of Resp't at 33. Maina does not further develop this argument. And we do not review this argument as it is raised in passing and has not been argued in any meaningful way. *Ameriquest Mortage Co. v. Attorney Gen.*, 148 Wn. App. 145, 166, 199 P.3d 468 (2009) *aff'd on other grounds,* 170 Wn.2d 418, 241 P.3d 1245 (2010) (declining to review an issue that has not been briefed or argued in any meaningful way).

---

[4] Maina does not assign error to any of the Board's findings of fact. Consequently, the Board's findings of fact are verities on appeal.

B.      *Interpretations and Applications of the Law and Substantial Evidence*

Maina argues that the Board erroneously interpreted and applied the law in making its neglect determination, and substantial evidence does not support the Board's finding of neglect. We agree that the Board erred on both grounds.

1. *Former RCW 74.34.020(16)(a)*

Mania argues that the Board incorrectly applied the law by determining that her two incidents regarding patient transfers constituted a pattern of conduct that failed to avoid or prevent physical or mental harm under former RCW 74.34.020(16)(a), and that the Board's analysis improperly attempted to broaden its authority to take punitive actions. DSHS appears to concede that Maina's conduct did not constitute neglect under former RCW 74.34.020(16)(a) by abandoning this basis for neglect on appeal. We accept its concession.

Neglect may occur when a person with a duty of care engages in a pattern of conduct or inaction that "fails to avoid or prevent physical or mental harm or pain to a vulnerable adult." Former RCW 74.34.020(16)(a). When interpreting a statute, we give the words their common and ordinary meaning absent some ambiguity or statutory definition. *HomeStreet, Inc. v. Dep't of Revenue*, 166 Wn.2d 444, 451, 210 P.3d 297 (2009). A pattern ordinarily means "a reliable sample of traits, acts, or other observable features characterizing an individual <behavior ~> <personality ~>." *Pattern*, WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (8th ed. 2002).

Here, in September 2018, Maina transferred a patient on a mechanical lift without assistance and without using a gait belt. On October 2, 2018, Maina transferred LS without assistance. Despite the involvement of a mechanical lift in both incidents, these two incidents involved different factual circumstances. In particular, the second incident involved both

7

potential urgent need for the patient to be moved and an attempt to obtain assistance from other staff. In contrast, the earlier incident involved a different patient and did not result in an injury. The Board incorrectly applied the law by determining that two unrelated incidents of a policy violation regarding different patients constituted a "pattern" under former RCW 74.34.020(16)(a). Thus, we accept DSHS's concession and hold that the Board erred in its application of former RCW 74.34.020(16)(a) and its determination that Maina neglected a vulnerable adult pursuant to it.

### 2. *Reliance on the Benefit of Hindsight*

Maina argues that the Board improperly viewed the matter with the benefit of hindsight, which, she says, is a clear error of law. Maina asserts that the Board used the benefit of hindsight to consider the September policy violation, the October incident at issue, and the subsequent injury to make its neglect determination.

Argument must be supported by references to relevant parts of the record. RAP 10.3(a)(6); *see Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992).

The order does not indicate whether the Board relied too heavily on the benefit of hindsight to determine if Maina neglected LS because an injury resulted. And Maina failed to provide citations to the record to support such a conclusion. Consequently, we decline to reach this argument.

### 3. *Former RCW 74.34.020(16)(b)*

Maina argues the Board incorrectly applied former RCW 74.34.020(16)(b) by utilizing the child neglect standard under *Brown* to analyze her conduct regarding a vulnerable adult.

DSHS concedes that the Board used the wrong legal standard, but argues that we can affirm the agency by applying the correct legal standard to the unchallenged findings. In response, Maina argues that DSHS knew that the Board's order included overturned case law, and it should not benefit from this error.[5] Maina also argues that the Board's neglect determination under former RCW 74.34.020(16)(b) is not supported by substantial evidence. We agree that the Board erred in applying the law by using the child neglect standard. We also agree that the Board's neglect determination under former RCW 74.34.020(16)(b) is not supported by substantial evidence.

Under former RCW 74.34.020(16)(b), neglect is defined as "an act or omission by a person or entity with a duty of care that demonstrates a serious disregard of consequences of such a magnitude as to constitute a clear and present danger to the vulnerable adult's health, welfare, or safety, including but not limited to conduct prohibited under RCW 9A.42.100." Under this provision, a showing of neglect requires five elements: (1) the person committed an act or omission, (2) that person owes a duty of care to (3) a vulnerable adult, (4) the act or omission demonstrated a serious disregard of consequences, and (5) the disregard was of such a magnitude as to constitute a clear and present danger to the vulnerable adult's health, welfare, or safety. Former RCW 74.34.020(16)(b); *see also Woldemicael v. Dep't of Soc. & Health Servs.*, 19 Wn. App. 2d 178, 183-84, 494 P.3d 1100 (2021). And "serious disregard requires more than simple negligence."[6] *Woldemicael*, 19 Wn. App. 2d at 182.

---

[5] DSHS informed the superior court of the proper standard in its trial briefing. Maina appears to argue that because DSHS knew the Board applied the improper standard, DSHS needed to ask the superior court for remand. And because the DSHS failed to do so, it should be precluded from arguing that remand is proper here. Maina does not cite authority to support this proposition. We disagree that DSHS cannot argue that remand is the appropriate remedy for an error of law before this court merely because it did not argue that at the superior court.

[6] Serious disregard and clear and present danger are not defined in RCW 74.34.

Here, the Board interpreted "serious disregard of consequences of such a magnitude as to constitute a clear and present danger to the vulnerable adult's health" as reckless disregard under *Brown*, 190 Wn. App. at 590 (analyzing the meaning of "neglect" under the Abuse of Children Act). But "*Brown* does not apply to neglect of a vulnerable adult, and the proper standard is the statutory definition of 'neglect' in RCW 74.34.020(16)(b)." *Woldemicael*, 19 Wn. App. 2d at 181. Accordingly, the Board erroneously interpreted the law of neglect.

Nevertheless, we may affirm the Board's order "on any basis established by the pleadings and supported by the record." *Pac. Land Partners, LLC v. Dep't of Ecology*, 150 Wn. App. 740, 753, 208 P.3d 586 (2009). In applying the five elements of neglect, there is no dispute that Maina owed LS a duty of care, that LS is a vulnerable adult, and that she committed an act or omission when LS was injured.[7] The question is then whether there is substantial evidence to support the final two elements: the aforementioned act constituted a serious disregard of the consequences and then whether the disregard was of such a magnitude as to constitute a clear and present danger to LS's health, welfare, or safety.

Linden Grove had a policy requiring two staff members to operate the sit to stand lift for safe resident handling. Linden Grove trained Maina how to conduct safe mechanical lifts in August. Maina engaged in an inappropriate mechanical lift the next month. Maina then

---

[7] Maina appears to argue that the Board erred in applying the law by considering two separate acts to determine that she engaged in neglect under former RCW 74.34.020(16)(b). The Board determined that Maina's culpable act was using the sit to stand lift by herself, in violation of Linden Grove's policy and her training. The Board did not determine Maina engaged in two culpable acts that supported the neglect determination. Rather, the Board appeared to emphasize Maina's prior violation of Linden Grove's mechanical lift policy to show that she had reason to know of the dangers of engaging in such a lift. Consequently, Maina's argument fails.

participated in an Individual Performance Improvement Plan after the accident and received training on the proper mechanical transfer procedure. Maina transferred LS without assistance in violation of facility policy in October.

Maina testified that there were three or four staff members at Linden Grove who could have helped her that evening, and that she was responsible for between ten and fourteen patients. Maina testified she asked two or three nursing assistants for help, but she could not remember their names.

Although the temporal proximity of Maina's initial training, her violation of Linden Grove policy, her retraining, and her subsequent violation of Linden Grove policy support a finding of negligence, those circumstances do not show more than simple negligence. Consequently, there is not substantial evidence supporting the conclusion that her act demonstrated a serious disregard of consequences.

And even if there was substantial evidence to support such a determination, there is not substantial evidence to show that Maina's disregard was of such a magnitude as to create a clear and present danger to LS. The record is unclear as to what tasks and duties each of the two staff members are responsible for while using the sit to stand lift and the consequences of its improper use. The Board did not analyze what risks are associated with transferring a patient on a sit to stand lift without a second person. Moreover, there are no findings of fact that relate to the likelihood of such risk, nor the magnitude of such risk, nor evidence in the record to that end.

On appeal, DSHS argues that violating this policy creates a substantial risk of falling, and falling is always a "clear and present danger" to vulnerable adults. Br. of Appellant at 22 (citing Jeffrey A. Pitman and Katherine E. Metzger, *Nursing Home Abuse and Neglect and the Nursing*

*Home Reform Act: An Overview*, 14 NAELA J. 137, 143 (2018)). But this evidence was not presented at the hearing, and consequently, we do not consider it. RCW 34.05.558. DSHS also emphasizes that the risk of falling and its dangers are reflected by Linden Grove's policy. Although Linden Grove's policy is reflective of the facility's concerns about the risks associated with transferring patients on a sit to stand lift without assistance, it does not state the risks associated with such a transfer; it does not state the probability of such risks occurring nor the magnitude of such risks should they occur. The policy merely underscores Linden Grove's belief that such transfers are unsafe. Of note, LS did not fall during Maina's transfer of him.

Consequently, we hold there is not substantial evidence to support the determination that Maina's act demonstrated a serious disregard of potential consequences. Moreover, even if there was substantial evidence to support that determination, we hold that there is not substantial evidence to show that the disregard was of such a magnitude as to constitute a clear and present danger to LS's health, welfare, or safety. Therefore, the Board erred by ruling that Maina neglected LS under former RCW 74.34.020(16).

### III. PATIENT RIGHTS

Maina appears to argue that she was immunized from a finding of neglect because she was compelled to ensure LS's rights were considered under the Civil Rights Act of 1964, RCW 70.129.140, and WAC 388-76-10510.[8] We disagree.

---

[8] We decline to reach the argument in as much as it relies on the Washington State Civil Rights Act of 1964 because the Act is only raised in passing. *Ameriquest Mortage*, 148 Wn. App. at 166. We also decline to reach the argument in as much as it relies on WAC 388-76-10510 because chapter 388-76 WAC regulates Adult family homes—"residential home[s] in which a person or an entity is licensed to provide personal care, special care, room, and board to more than one but not more than six adults." WAC 388-76-10000. Linden Grove is a skilled nursing facility, not a residential home, and thus, chapter 388-76 WAC does not apply here.

Chapter 70.129 RCW applies to long-term care facilities. RCW 70.129.010(4). RCW 70.129.140(2) establishes

> Within reasonable facility rules designed to protect the rights and quality of life of residents, the resident has the right to:
> . . . .
> (c) Make choices about aspects of his or her life in the facility that are significant to the resident;
> . . . .
> (e) Unless adjudged incompetent or otherwise found to be legally incapacitated, participate in planning care and treatment or changes in care and treatment;
> (f) Unless adjudged incompetent or otherwise found to be legally incapacitated, to direct his or her own service plan and changes in the service plan, and to refuse any particular service so long as such refusal is documented in the record of the resident.

Assuming without deciding that Linden Grove is a long-term care facility, RCW 70.129.140(2) does not immunize Maina from a finding of neglect. Although LS had the right to participate in his treatment under that statute, that statute did not allow Maina to violate "reasonable facility rules designed to protect the rights and quality of life of residents." RCW 70.129.140(2) . And Linden Grove's policy that required two people for any patient transfer using a sit to stand lift to ensure safe transfers appears on its face to be a "reasonable facility rule." Consequently, Maina's argument fails.

ATTORNEY FEES

Maina argues that we should award her attorney fees as the prevailing party under the EAJA. DSHS argues that we should not award Maina attorney fees because its actions were substantially justified. We agree with DSHS.

RAP 18.1(a)-(b) provides for the recovery of reasonable attorney fees on appeal if "applicable law grants to a party the right to recover reasonable attorney fees or expenses on

13

review" and the party properly requests it. The EAJA authorizes an award of attorney fees to "a qualified party that prevails in a judicial review of an agency action . . . unless the court finds that the agency action was substantially justified or that circumstances make an award unjust." RCW 4.84.350(1). Even if the agency action is ultimately incorrect, it "is substantially justified if it had a reasonable basis in law and in fact." *Rios-Garcia v. Dep't of Soc. & Health Servs.*, 18 Wn. App. 2d 660, 674, 493 P.3d 143 (2021). Where agency action is arbitrary and capricious, such action is not substantially justified. *Raven v. Dep't of Soc. & Health Servs.*, 177 Wn.2d 804, 832, 306 P.3d 920 (2013) (reversing the superior court's determination that DSHS's actions were not substantially justified and noting that "[w]e are wary of upholding a fee judgment . . . particularly where there has been no determination that DSHS's actions were arbitrary, willful, or capricious.").

Because we reverse the Board's decision, Maina is the prevailing party. But DSHS's interpretation and application of RCW 74.34.020 was substantially justified. DSHS's actions did not appear arbitrary, willful, or capricious, nor was DSHS unreasonable in pursuing a finding of neglect. Because DSHS's actions were substantially justified, we decline to award attorney fees.

CONCLUSION

We hold that (1) the Board incorrectly applied the law by determining that two unrelated incidents of a policy violation regarding different patients constituted a "pattern" under former RCW 74.34.020(16)(a); (2) the Board incorrectly applied the law by applying the child neglect standard in *Brown* to the neglect of a vulnerable adult; and (3) the determination that Maina's act demonstrated a serious disregard of consequences of such a magnitude as to constitute a clear and present danger to LS's health, welfare, or safety is not supported by substantial evidence.

No. 57027-1-II

We deny Maina's request for attorney fees. We affirm the superior court order reversing the Board's final order

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_Che, J._____
Che, J.

We concur:

_Glasgow, CJ_____
Glasgow, C.J.

_Cruser, J._____
Cruser, J.