[No. 14495-6-II.    Division Two.    October 19, 1993.]

*In the Matter of the Marriage of* WASIR BLICKENSTAFF, *Appellant, and* DIANA RUTH BLICKENSTAFF, *Respondent.*

*John L. Meader,* for appellant.

*John R. Stichman* and *Marsh, Stichman & Higgins,* for respondent.

PETRICH, J.[*] — Wasir Blickenstaff appeals the trial court's denial of his motion to modify his child support obligation while he serves a 59-month prison term. He contends the trial court erred in finding him to be voluntarily unemployed and in imputing income to him, which thereby prevented him from demonstrating the substantial change in circumstances necessary for a modification under RCW 26.09.170-(1), or the change of income necessary for a modification under RCW 26.09.170(8)(a). We agree that Wasir was not voluntarily unemployed and reverse the results of this reasoning. We nevertheless remand for further proceedings to determine whether Wasir has assets that can be liquidated to meet his support obligation.

Wasir and Diane Blickenstaff were divorced in 1987. At that time, Wasir earned an annual salary of $34,200. Based on this salary, the court ordered Wasir to pay $500 a month in support for his two minor children. The court also ordered him to pay half of their uninsured health insurance costs and to provide a life insurance policy for their benefit.

Wasir, having previously pleaded guilty to a charge of indecent liberties committed on or about July 8, 1981, was, at the

---

[*] Judge John A. Petrich was a member of the Court of Appeals at the time oral argument was heard on this matter. He is now serving as a judge pro tempore of the court pursuant to CAR 21(c).

time of the divorce, under probation pursuant to an order deferring imposition of a sentence (RCW 9.95.200-.240). On January 4, 1990, the court found Wasir had failed to complete a sex offender treatment program, had used pornographic material, and had made unauthorized contact with minor females. Based on these parole violations, the court revoked Wasir's probation and sentenced him to prison. As a consequence, Wasir lost his job.

On July 16, 1990, Wasir petitioned the court to reduce his child support and to terminate his other support obligations. The statute in effect at that time, RCW 26.09.175(1) (Laws of 1990, 1st Ex. Sess., ch. 2, § 4) required him to initiate the modification proceedings by filing a petition, a supporting affidavit, and worksheets. Wasir filed the petition and supporting affidavit but no worksheets.

The trial court denied Wasir's motion. In so doing, the trial court entered the following written finding:

> The petitioner, Wasir Blickenstaff[,] willfully violated provisions of the probation which were necessary for protection of children. These willful and voluntary acts of petitioner, which resulted in the probation violation [led] to said petitioner's loss of employment. Therefore, said petitioner's own volition and voluntary acts [led] to his incarceration which resulted in his job loss.

We assume the trial court denied Wasir's petition on its finding that he was "voluntarily unemployed" and, thus, unable to show a substantial change of circumstances. The trial court also imputed income to Wasir in the amount of his preincarceration earning capacity, presumably upon the same finding. Wasir appeals.

We first decide whether Wasir was entitled to a modification under former RCW 26.09.170(1) (Laws of 1990, 1st Ex. Sess., ch. 2, § 2). RCW 26.09.170(1) then authorized a court to modify child support upon a showing of a "substantial change of circumstances."[1] Subsection (6) of RCW 26.09.170 explains

---

[1]RCW 26.09.170(1) then provided:

"Except as otherwise provided in subsection (7) of RCW 26.09.070, the provisions of any decree respecting maintenance or support may be modified only as to installments accruing subsequent to the motion for modification and, except as

that voluntary unemployment, standing alone, does not constitute a substantial change in circumstances. RCW 26.09-.170(6).[2] In other words, RCW 26.09.170 prevents courts from modifying support orders where the only change in circumstances is the petitioner's loss of income caused by voluntary unemployment. *See Lambert v. Lambert*, 66 Wn.2d 503, 509-10, 403 P.2d 664 (1965) (trial court could not consider evidence of a parent's self-induced decline in income; therefore, decline in income could not afford a basis for modification). In light of this statutory directive, we cannot determine whether the trial court erred in failing to find a substantial change of circumstances without first deciding whether it erred in finding Wasir to be voluntarily unemployed.

To answer this question, we examine the language of the child support statute. The statute fails to define "voluntary unemployment". Where a statutory term is undefined, a court is to give it its usual and ordinary meaning. *Dominick v. Christensen*, 87 Wn.2d 25, 27, 548 P.2d 541 (1976). The usual and ordinary meaning of "voluntary", according to *Webster's New World Dictionary* 1592 (2d College ed. 1976) is "brought about by one's own free choice . . . intentional; not accidental." The usual and ordinary meaning of "voluntary unemployment" then is that the unemployment is brought about by one's own free choice and is intentional rather than accidental.

Although clear at first blush, the term becomes ambiguous in the face of the parties' equally plausible meanings. Diane argues, and the trial court found, that Wasir's unem-

otherwise provided in subsections (4), (5), and (8) of this section, only upon a showing of a substantial change of circumstances. The provisions as to property disposition may not be revoked or modified, unless the court finds the existence of conditions that justify the reopening of a judgment under the laws of this state." (Wasir did not argue that he was entitled to a modification under subsections (4) or (5). He did argue that he was entitled to a modification under former subsection (8). We decide whether he was entitled to a modification under former subsection (8) later in this opinion.)

[2]RCW 26.09.170(6) provides that:
"An obligor's voluntary unemployment or voluntary underemployment, by itself, is not a substantial change of circumstances."

ployment was "voluntary" because it resulted from his intentional parole violations. Wasir counters that the intentional act must be directly related to the employment decision itself; *i.e.*, one must have the option to work and intentionally forgo it.

Because the dictionary definition is susceptible of either construction, we rely on principles of statutory construction to resolve this dispute. *Rozner v. Bellevue*, 116 Wn.2d 342, 347, 804 P.2d 24 (1991) (citing *Bellevue Fire Fighters Local 1604 v. Bellevue*, 100 Wn.2d 748, 751, 675 P.2d 592 (1984), *cert. denied*, 471 U.S. 1015 (1985)). In so doing, our fundamental objective is to "ascertain and carry out the intent of the Legislature." *Rozner*, 116 Wn.2d at 347.

On this issue, two principles are particularly useful. The first is the principle that the Legislature's intent may be discerned from administrative interpretations of the statute. *Rozner*, 116 Wn.2d at 347. The second is the principle that legislative intent may be determined from the content of subsequent amendments to the statute. *Everett v. State*, 99 Wn.2d 264, 269-70, 661 P.2d 588 (1983); *State v. Barr*, 99 Wn.2d 75, 78-79, 658 P.2d 1247 (1983).

> An original act and an amendment should be read and construed as one law passed at the same time. . . . Where the statute has not been interpreted to mean something different and where the original enactment was ambiguous to the point that it generated dispute as to what the Legislature intended, a subsequent amendment can enlighten courts as to a statute's original meaning.

(Citations omitted.) *Ravsten v. Department of Labor & Indus.*, 108 Wn.2d 143, 150-51, 736 P.2d 265 (1987). We employ these two principles in the same discussion because they apply to what is essentially a single interpretation of the term "voluntary unemployment"; *i.e.*, an administrative rule that the Legislature subsequently codified.

The term is used when computing a parent's child support obligation. The Washington State Child Support Schedule Commission (Commission) interpreted the term "voluntary unemployment" when, pursuant to legislative authority, it developed standards for allocating child support to unem-

ployed parents.[3] Its interpretation is documented in the instructions it drafted to assist courts and parents in completing the financial worksheets used to calculate each parent's child support obligation, Washington State Child Support Schedule Commission, *Washington State Child Support Schedule*, "Standards for the Determination of Child Support and Use of the Schedule" (effective July 1, 1990).[4] Instruction 15 provided:

> Wage income shall be imputed for parents who are voluntarily unemployed or voluntarily underemployed. . . . Income shall not be imputed for an unemployable parent.

The Legislature apparently approved of the Commission's interpretation because it employed virtually identical language when it enacted RCW 26.19.071, "Standards for determination of income", enacted by Laws of 1991, 1st Sp. Sess., ch. 28, § 5, effective September 1, 1991. RCW 26.19.071(6) provides:

> (6) **Imputation of income.** The court shall impute income to a parent when the parent is voluntarily unemployed or voluntarily underemployed. . . . Income shall not be imputed for an unemployable parent. . . .

█ These instructions prevent courts from finding incarcerated parents to be "voluntarily unemployed". By preventing courts from imputing income to "unemployable" parents while allowing courts to impute income to "voluntarily unemployed" parents, instruction 15 prevents *courts from finding* "unemployable" parents to be "voluntarily unemployed".

---

[3]Former RCW 26.19.040(3) (Laws of 1988, ch. 275) provided:

"The commission shall establish standards for applying the child support schedule. Included in these standards shall be:

". . . .

"(b) Provisions for taking into account the voluntary unemployment or underemployment of one or both parents or if the income of a parent is not known; . . .".

[4]RCW 26.19.050(1) provided:

"The commission shall develop and adopt worksheets and instructions. The commission shall attempt to the greatest extent possible to make the worksheets and instructions understandable by persons who are not represented by legal counsel."

The dictionary defines the term unemployable, used as an adjective, as "not acceptable for employment as a worker". *Webster's Third New International Dictionary* 2493 (2d College ed. 1969). Prisoners are obviously unacceptable for employment as workers due to their incarceration; therefore, prisoners are unemployable. Since courts cannot find "unemployable parents" to be "voluntarily unemployed" it follows that courts may not find incarcerated parents to be voluntarily unemployed. Instruction 15 and RCW 26.19.071(6) make it clear that the Legislature did not intend to equate incarceration with "voluntary unemployment".

This interpretation accords with Washington case law. Where our courts have found a parent to be voluntarily unemployed, the parent has been employable. *Lambert v. Lambert, supra* (where the obligor quit a paying job to pursue his failing business, the court found him to be voluntarily unemployed); *Carstens v. Carstens*, 10 Wn. App. 964, 965, 521 P.2d 241 (1974) (where the obligor was qualified to be an accountant but chose not to practice his profession and where he depleted his assets due to his alcoholism, the court found the condition to amount to voluntary unemployment). *See also In re Marriage of Curran*, 26 Wn. App. 108, 110-11, 611 P.2d 1350 (1980) (where parent held a position yielding a very low salary given his education and business background, the court could consider loans and gifts in setting child support).

Our refusal to equate incarceration with voluntary unemployment finds support in decisions from other jurisdictions. Several jurisdictions have addressed the narrow issue of whether incarceration constitutes voluntary unemployment. The majority holds that it does not.[5] Other jurisdictions have addressed the broader issue of whether an incarcerated parent should be relieved of his or her child support obligation while serving a prison term. The rule that emerges from

---

[5] *Nab v. Nab*, 114 Idaho 512, 757 P.2d 1231 (Ct. App. 1988); *People ex rel. Meyer v. Nein*, 209 Ill. App. 3d 1087, 568 N.E.2d 436 (1991); *Pierce v. Pierce*, 162 Mich. App. 367, 412 N.W.2d 291 (1987); *Leasure v. Leasure*, 378 Pa. Super. 613, 549 A.2d 225 (1988). *Contra, Ohler v. Ohler*, 220 Neb. 272, 369 N.W.2d 615 (1985); *Noddin v. Noddin*, 123 N.H. 73, 455 A.2d 1051 (1983).

these cases, generally stated, is that unless the parent is imprisoned for a crime of nonsupport or for civil contempt for failure to pay support,

> [i]mprisonment and resulting indigency constitute a significant change of circumstances such as to permit a court to modify a support obligation.

*Clemans v. Collins*, 679 P.2d 1041, 1041 (Alaska 1984) (quoting *In re Marriage of Edmonds*, 53 Or. App. 539, 542, 633 P.2d 4, 5 (1981)).[6]

The reasons for allowing prisoners to obtain relief from their child support obligations were summarized by the Chief Justice of the Nebraska Supreme Court, Justice Krivosha, in his dissent in *Ohler v. Ohler*, 220 Neb. 272, 369 N.W.2d 615 (1985). In urging the court to adopt the reasoning of the Court of Appeals for the State of Oregon in the case of *Edmonds*, and the case of *Tice v. Tice*, 207 Or. 247, 295 P.2d 866 (1956), Justice Krivosha stated:

> We obviously recognize that the child support judgment will not be paid during the time that the parent is incarcerated, and therefore the judgment will simply accrue with interest. Such a situation provides little or no benefit to anyone. The children do not receive the benefit of the proceeds during the time they require the funds, and the parent is simply confronted with a large, nondischargeable judgment upon release from prison, at a time when the prospect of paying a large judgment with interest is extremely unlikely. At current interest rates the judgment will double every 6 or 7 years. How this can be in the children's best interest is difficult for me to imagine.
>
> . . . .
>
> In dissenting I do not for a moment ignore the fact that the parent against whom the judgment runs has been convicted of violating a law and has brought the problem into being by reason of his own act. Nevertheless, the violation of the criminal law is a matter which the State addressed, and for which the individual is now paying the penalty. To impose an additional penalty is not appropriate.

*Ohler*, at 277-78. *Accord, Nab v. Nab*, 114 Idaho 512, 519, 757 P.2d 1231, 1238 (Ct. App. 1988); *Leasure v. Leasure*, 378

---

[6] *See Nab*, at 519; *Pierce*, at 370; *Foster v. Foster*, 99 A.D.2d 284, 286, 471 N.Y.S.2d 867, 869 (1984).

Pa. Super. 613, 616-17, 549 A.2d 225, 227 (1988); *Pierce v. Pierce, supra* at 371. We find these reasons persuasive.

These reasons, along with the administrative interpretation of the statute, the subsequent amendment thereto, and authority from other jurisdictions, support Wasir's position. We hold, therefore, that an incarcerated parent is not "voluntarily unemployed" within the meaning of the child support statutes unless the parent was imprisoned for a crime of nonsupport or for civil contempt for failure to pay support. Because Wasir was not imprisoned for a crime of nonsupport or for civil contempt for failure to pay support, Wasir was not "voluntarily unemployed". The trial court erred in finding otherwise and in imputing income to him.

■■ In view of our holding, it follows that the trial court could have considered evidence of Wasir's lack of income when deciding whether to grant his modification petition. This does not mean, however, that the trial court was required to grant Wasir's petition. A trial court exercises broad discretion in its decision to modify the child support provisions of a divorce decree. *Lambert,* 66 Wn.2d at 508. The court considers all factors bearing upon the needs of the child and the parent's ability to pay: Income, or lack thereof, is only one factor. *See* RCW 26.19.020(6) (Laws of 1989, ch. 175, § 76). Where the obligor has other means of paying his or her child support obligation, the trial court has the discretion to enforce the obligation even in the face of a total lack of income. *See Carstens v. Carstens,* 10 Wn. App. 964, 965, 521 P.2d 241 (1974).

To hold otherwise would thwart a major purpose of the child support statute, which is to "insure that child support orders are adequate to meet a child's basic needs . . .." RCW 26.19.001 (Laws of 1988, ch. 275, § 1). *See also* former RCW 26.19.040(2)(c) (Laws of 1988, ch. 275, § 5). In fact, our research has yet to disclose a single case where a court has excused an imprisoned parent's duty to pay child support where the parent had some other source of income from which to discharge the obligation or had some asset that could be liquidated for that purpose. *See Division of Child*

*Support Enforcement ex rel. Harper v. Barrows*, 570 A.2d 1180, 1183 (Del. 1990); *People ex rel. Meyer v. Nein*, 209 Ill. App. 3d 1087, 1089 n.8, 568 N.E.2d 436, 437 (1991); *In re Marriage of Vetternack*, 334 N.W.2d 761, 763 (Iowa 1983).[7]

The record below indicates that Wasir was the beneficiary of a pension fund at the time of the divorce and that the pension remains intact. However, the trial court made no finding regarding this pension fund nor did it make any finding regarding any other assets. The court's denial should have been supported by such a finding.[8] *See In re Marriage of Cook*, 28 Wn. App. 518, 521, 624 P.2d 743 (1981) ("the showing of changed circumstances required by RCW 26.09-

---

[7] *See Clemans*, 679 P.2d at 1042 (case remanded to decide if incarcerated parent has available assets to meet child support payment); *Nab*, at 519 (where noncustodial parent is imprisoned for crime other than nonsupport, parent is not liable for payments while incarcerated unless he has income or assets to make such payments); *Redmon v. Redmon*, 823 S.W.2d 463 (Ky. Ct. App. 1992) (child support should not be suspended during incarceration where parent has assets that can be liquidated); *Pierce*, at 370 (parent is not liable for child support while incarcerated unless it is affirmatively shown that he or she has income or assets to make such payments); *Noddin*, at 76 (child support should not be reduced "where his own conduct has resulted in his loss of high-earning employment and he has at least one valuable asset"); *Foster v. Foster*, 99 A.D.2d 284, 286, 471 N.Y.S.2d 867, 869 (1984) (incarcerated parent not liable for child support unless it is affirmatively shown that assets are available); *Leasure*, at 617 (no obligation for incarcerated parent to pay child support "unless that parent possesses another asset from which funds could be generated"); *Proctor v. Proctor*, 773 P.2d 1389, 1391 (Utah Ct. App. 1989) (guidelines inappropriate where the prisoner has no income but has equity in home that can be liquidated to meet the support obligation).

[8] The following jurisdictions require an affirmative showing that the prisoner has assets with which to meet his or her support obligation before it will enforce the obligation: *Nab*, at 519 (Idaho) (where noncustodial parent is imprisoned for crime other than nonsupport, parent is not liable for payments while incarcerated unless he has income or assets to make such payments); *Pierce*, at 370 (Mich.) ("where a noncustodial parent is imprisoned for a crime other than nonsupport that parent is not liable for child support while incarcerated unless it is affirmatively shown that he or she has income or assets to make such payments"); *Clemans* (Alaska) (court remanded to superior court to determine whether incarcerated obligated parent has available assets to meet child support payments); *Foster*, at 286 (New York) (incarcerated parent not liable for child support unless it is affirmatively shown that assets are available).

.170 is a material factual determination in any modification proceeding, as to which the trial court should make a finding of fact.").

We remand this case to the trial court. On remand, the trial court should decide Wasir's motion on the merits. The court should determine whether the pension fund, or any other asset, is available to Wasir and, if warranted, to modify the decree appropriately.

■ We next address Wasir's contention that the trial court erred in failing to consider whether he was entitled to a modification under former RCW 26.09.170(8) (Laws of 1990, 1st Ex. Sess., ch. 2, § 2), which allows courts to modify child support based upon change in income alone, without showing a substantial change of circumstances.[9] Former RCW 26.09.170(8)(a) provided that parties who intend to seek a modification under this section of the statute "may initiate the modification pursuant to procedures of RCW 26.09.175." The procedures outlined in RCW 26.09.175 (Laws of 1990, 1st Ex. Sess., ch. 2, § 3) required the filing and service of a petition, financial affidavit, and worksheets:

(1) A proceeding for the modification of an order of child support shall commence with the filing of a petition, a supporting financial affidavit, and worksheets. . . .
(2) The petitioner shall serve upon the other party the summons, a copy of the petition and affidavit, and a blank copy of a financial affidavit and the worksheets in the form prescribed by the administrator for the courts.

Wasir failed to file worksheets on his own behalf and failed to serve blank copies of the worksheets on Diane. Because

[9]Former RCW 26.09.170(8) (Laws of 1990, 1st Ex. Sess., ch. 2, § 2) provides:
"(a) Except as provided in (b) and (c) of this subsection, all child support decrees may be adjusted once every twenty-four months based upon changes in the income of the parents without a showing of substantially changed circumstances. Either party may initiate the modification pursuant to procedures of RCW 26.09.175.
"(b) Parents whose decrees are entered before the effective date of this act may petition the court for a modification after twelve months has expired from the entry of the decree or the most recent modification setting child support, whichever is later. However, if a party is granted relief under this provision, twenty-four months must pass before another petition for modification may be filed pursuant to (a) of this subsection."

Wasir neglected to follow procedure, the court did not err in failing to decide whether he was entitled to a modification under this section of the statute.

We reverse and remand for further proceedings consistent with this decision.

SEINFELD, A.C.J., and MORGAN, J., concur.