# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

In the Matter of the Marriage of,      )
                                       )

SUZUKO KOMI,                   )

                               Respondent,     )

                   and                     )

JOHN McKAY,                    )

                               Appellant.       

No. 69631-9-I

DIVISION ONE

UNPUBLISHED OPINION

FILED: March 17, 2014

APPELWICK, J. — Substantial evidence supports the trial court's determination that McKay was voluntarily unemployed and the court's calculation of his imputed income. The record also establishes that the trial court considered the necessary statutory factors in determining the residential provisions. Because McKay fails to demonstrate any prejudicial error or abuse of discretion, we affirm the child support order and the final parenting plan.

## FACTS

Suzuko Komi and John McKay married in 1998 and divorced a short time later. After Komi became pregnant with their daughter M., the parties remarried in 2000. Komi filed a dissolution petition on October 17, 2011. A four day trial began on September 24, 2012. The trial court's findings of fact and other evidence presented at trial support the following summary.

Before M.'s birth, McKay, with the assistance of an attorney, prepared a "Sole Parenting Agreement." On January 3, 2000, the parties signed the parenting agreement, which provided that McKay would have no responsibility for the child. On

the same day, the parties also executed a premarital agreement, providing, among other things, that all income of the parties would remain separate property.

McKay did not believe that the parenting agreement had any legal effect, but he never provided any financial support for M. or Komi. Komi paid for all housing costs, including mortgage payments, food and clothing, day care and medical insurance for M., and all extracurricular expenses. The parenting agreement also specified that McKay and Komi resided at separate locations. In 2004, in accordance with the terms of the premarital agreement, McKay quitclaimed to Komi any interest that he had in her house. Although McKay claimed otherwise, substantial evidence supports the trial court's finding that prior to June 2011, McKay had only sporadic contact with M. and assumed no regular parental responsibilities.

McKay earned a Ph.D. in biology from the University of Washington in 1981. From 1981 to about 1991, he participated in a series of post-doctorate fellowships at Brown University, Fred Hutchinson Cancer Research Center, and University of Washington. During this period, McKay's annual income ranged from $0 to $27,996.

In about 1991, McKay determined "that his research career in the highly mobile filed of biology was stalled" and "made the rational decision to move into computers, hoping to develop a computer program with value." McKay became self-employed as a computer consultant. From 1991 to 2007, his yearly income fluctuated between $560 and $28,885. McKay claimed that he voluntarily stopped working in 2009.

In June 2011, after spending the night at Komi's home, McKay refused to leave, despite Komi's repeated requests. His continued presence in the home for the next four months had the effect of undermining the mother's authority over M.

On October 4, 2011, McKay petitioned for a domestic violence protection order, alleging that Komi was an abusive and violent parent. In support of the petition, McKay falsely asserted that he "share[d]" the family's home with Komi.

The court commissioner issued a temporary protection order, resulting in Komi's exclusion from her home for a period of two months. The trial court later dismissed the protection order on revision, subject to review following the guardian ad litem's (GAL) report. In reaching this decision, the court noted the conclusion in the Family Court Services investigation that it was likely that McKay "has overstated his concerns and the child is not in danger from the mother." Carol Bailey-Medwell, the GAL, completed her report in July 2012.

At trial, Bailey-Medwell testified that M. had confirmed one incident in which Komi had slapped her. But, M. did not confirm most of McKay's accounts about Komi's alleged abusive behavior, including his description of the fudgsicle and dog vomit incidents. Bailey-Medwell expressed concern that McKay's actions, including bringing M. to three different mental health providers and refusal to support M's long established structure and schedule, were inappropriately transmitting his negative views about Komi to M. Bailey-Medwell did not observe anything in M.'s interaction

with Komi "that would indicate that there had been any serious incidents or some pattern there that interfered with [M.'s] ability to connect with her mom."

On October 23, 2012, the court entered findings of fact and conclusions of law, the final parenting order, a child support order, and decree of dissolution. The court found that although there was evidence that Komi "has thrown items, yelled and slapped," the incidents did not "rise to the level of abuse." The parenting plan provided that M. would live with Komi for a majority of the time and with McKay on alternate weekends and for three weeks during the summer. The court granted Komi sole decision-making authority. In setting McKay's child support obligation, the trial court found that McKay had chosen not to work since about 2007 and was therefore voluntarily unemployed. The court determined that the record was insufficient to determine McKay's past full-time earnings and rate of pay and imputed income based on the median net monthly income table. See RCW 26.19.071(6)(e).

## DISCUSSION

### I. Imputation of Income

McKay contends that the trial court erred in finding him voluntarily unemployed. He argues that he quit working at the appropriate age of 62, that his computer skills and biology degree are obsolete, that he was nearly 65 at the time of trial, and that his social security retirement income will be similar to his historical income.

RCW 26.19.071(6) directs the trial court to impute income to a parent when the parent is "voluntarily unemployed or voluntarily underemployed." The trial court determines voluntary unemployment "based upon that parent's work history, education, health, and age, or any other relevant factors." Id. "Voluntary unemployment" generally means "that the unemployment is brought about by one's own free choice and is intentional rather than accidental." In re Marriage of Blickenstaff, 71 Wn. App. 489, 493, 859 P.2d 646 (1993). We review the trial court's determination of voluntary unemployment for substantial evidence. In re Marriage of Didier, 134 Wn. App. 490, 497, 140 P.3d 607 (2006).

McKay acknowledged that he voluntarily stopped working several years before the dissolution trial. He did not identify any health restrictions that prevented him from working. Although he alleged that the age of his biology degree and the nature of his computer consulting specialty made new employment difficult to find, there was no evidence suggesting that he was unemployable. See Blickenstaff, 71 Wn. App. at 495. Substantial evidence supports the trial court's finding that McKay was voluntarily unemployed.

McKay also contends that the trial court erred in imputing income based on the median net monthly income table. Under certain circumstances, RCW 26.19.071(6) requires the trial court to impute income based on historical data:

> (b) Full-time earnings at the historical rate of pay based on reliable information, such as employment security department data;
> (c) Full-time earnings at a past rate of pay where information is incomplete or sporadic.

McKay claims that a 2008 social security statement provided reliable historical evidence of his income from 1980 to 2007 on which to base imputed income. McKay does not identify any other evidence in the record supporting this contention.

The 2008 social security statement provides only the total amount of McKay's earnings during the specified years. Even coupled with McKay's conclusory assertions that he worked "full[-]time" during this period, the statement does not establish his "full-time earnings" or past "rate of pay." Id. Because there was no reliable evidence of McKay's historical full-time earnings or past rate of pay, the trial court properly imputed income based on the median net monthly income table. RCW 26.19.071(6)(e).

McKay contends that the trial court erred by including a $535 Social Security payment for M. in his income calculation because "Social Security ceases this payment, and all payments, when father is employed at the level imputed." But, in accordance with RCW 26.18.190(2), the trial court properly included the social security payment on M.'s behalf in McKay's income for purposes of calculating child support and also credited the payment toward his support obligation. See In re Marriage of Briscoe, 134 Wn.2d 344, 349, 949 P.2d 1388, 971 P.2d 500 (1998).

II.    Exclusion of Expert Witness

On the first day of trial, McKay sought permission to call psychologist Dr. Gary Wieder as an expert witness at trial. After the GAL issued her report, McKay took M. to Dr. Wieder. In his declaration, Dr. Wieder reported that M. had told him "'that her

father told her that the GAL said that he did not tell the truth about certain events that occurred last summer.'" The trial court found that in doing so, McKay had inappropriately sought to draw M. into the litigation. Dr. Wieder also stated that his declaration about his meeting with M. was "'not meant to allege that reported acts have occurred and represent fact.'"

The trial court denied the motion and excluded Dr. Wieder as an expert witness. An appellate court reviews the trial court's decision to exclude expert testimony for an abuse of discretion. See State v. Kirkman, 159 Wn.2d 918, 927, 155 P.3d 125 (2007).

On appeal, McKay contends that the trial court erred in excluding the proposed expert witness as a discovery sanction without considering the factors set forth in Burnet v. Spokane Ambulance, 131 Wash.2d 484, 494, 933 P.2d 1036 (1997). See also Jones v. City of Seattle, ___ Wn.2d ___, 314 P.3d 380 (2013). But McKay fails to analyze the Burnet factors in light of the specific facts of this case. The trial court considered the proposed testimony in extensive detail on at least three separate occasions. McKay fails to identify or address the court's detailed discussion and reasoning in reaching the decision, including the timing of McKay's request, his failure to adhere to discovery schedules and delay in retaining a new attorney, the substance of the proposed testimony, and the need to resolve the pending parenting issues. Under the circumstances, McKay makes no showing that the trial court erred in excluding the proposed testimony. See Saunders v. Lloyd's of London, 113 Wn.2d

330, 345, 779 P.2d 249 (1989) (appellate court will decline to consider issues unsupported by cogent legal argument and citation to relevant authority).

Moreover, the trial court repeatedly observed that the proposed testimony would not be helpful to its assessment of the disputed issues at trial. The court noted that the primary issues, including McKay's challenge to the adequacy of the GAL report, involved factual disputes between Komi and McKay about the occurrence of certain events. Dr. Wieder did not purport to offer any assistance in resolving those critical factual disputes and his proposed testimony would have been cumulative of certain issues. Consequently, even if McKay could demonstrate a Burnet violation, the error was harmless. See Jones, 314 P.3d at 397 (Burnet violation harmless where proposed testimony was harmless or cumulative).

III. Parenting Plan

McKay contends that the trial court determined the residential provisions of the parenting plan without considering the required statutory factors and relied on a deficient GAL report. We disagree.

When the limitations of RCW 26.09.191 are not controlling, RCW 26.09.187(3)(a) requires the trial court to consider the following factors when determining residential provisions:

> (i) The relative strength, nature, and stability of the child's relationship with each parent;
> (ii) The agreements of the parties, provided they were entered into knowingly and voluntarily;
> (iii) Each parent's past and potential for future performance of parenting functions ... including whether a parent has taken greater

responsibility for performing parenting functions relating to the daily needs of the child;

(iv) The emotional needs and developmental level of the child;

(v) The child's relationship with siblings and with other significant adults, as well as the child's involvement with his or her physical surroundings, school, or other significant activities;

(vi) The wishes of the parents and the wishes of a child who is sufficiently mature to express reasoned and independent preferences as to his or her residential schedule; and

(vii) Each parent's employment schedule, and shall make accommodations consistent with those schedules.

The court shall accord the first factor the greatest weight. RCW 26.09.187(3)(a)(vii).

We review parenting plan provisions for an abuse of discretion. See In re Marriage of Littlefield, 133 Wn.2d 39, 46, 940 P.2d 1362 (1997). When evidence and written findings of fact reflect consideration of the statutory factors, the trial court need not enter specific findings. In re Marriage of Murray, 28 Wn. App. 187, 189, 622 P.2d 1288 (1981).

McKay contends that the trial court failed to consider M.'s emotional needs, her residential preferences, and the parents' employment schedules. But, McKay has not assigned error to or specifically challenged the trial court's parenting plan findings, primarily findings 2.21A-M. The findings are therefore verities on appeal. In re Estate of Jones, 152 Wn.2d 1, 8, 93 P.3d 147 (2004). Moreover, substantial evidence supports all of the court's findings of fact.

Among other things, the trial court flatly rejected McKay's claims of having played major or significant roles in M.'s upbringing and allegations that Komi was an abusive parent. McKay saw M. only sporadically and had assumed no significant parenting responsibilities for most of M's life, and the court was clearly aware that McKay had not worked for several years. The findings also reflect the court's

determination that McKay had undermined Komi's long-exercised authority by refusing to leave her home for four months and then misrepresenting the nature of the parties' relationship in seeking a protection order. The court found that in his attempt to prove allegations of domestic abuse and violence, McKay had inappropriately drawn M. into the litigation. Finally, the GAL testified that M. should spend more time with McKay during the summer, and the trial court eventually extended the summer vacation schedule from two weeks to three weeks.

Viewed in light of the parties' arguments and the evidence at trial, the findings of fact reflect the court's consideration of the child's emotional needs and residential preferences, the parties' employment schedules, and all of the remaining statutory factors. The trial court did not abuse its discretion in setting the residential schedule.

## IV.     Domestic Violence and Child Abuse Findings

McKay contends that the trial court erred by failing to enter findings of fact addressing whether Komi committed acts of domestic violence. See RCW 26.09.191. He further asserts that the trial court failed to enter "direct findings" on his allegations that Komi committed child abuse. Because he cites no authority to support these claims, we need not address them.

We note, however, that the trial court expressly found that Komi's acknowledgement of incidents involving a slap, the throwing of items, and yelling, did not "rise to the level of abuse." Moreover, to the extent that McKay was advocating for findings of domestic violence and abuse, he bore the burden of proof at trial. The absence of a finding on a disputed issue is considered a finding against the party having the burden of proof. Wallace Real Estate Inv., Inc. v. Groves, 72 Wn. App.

759, 773 n.9, 868 P.2d 149, aff'd, 124 Wn.2d 881, 881 P.2d 1010 (1994); In re Marriage of Williams, 156 Wn. App. 22, 29, 232 P.3d 573 (2010).

V.    GAL Report

McKay contends that the trial court erred in relying on the GAL's report. Among other things, he alleges that the GAL ignored significant evidence, made various factual errors and erroneous assumptions, failed to investigate critical issues and contact important witnesses, reached unsupported conclusions, failed to list the materials she considered, and demonstrated bias and unfairness.

But, the GAL testified at trial. McKay's counsel cross-examined her at great length about the bases for her various conclusions. McKay's arguments about the alleged deficiencies are properly directed to the trier of fact. To the extent that the trial court found the GAL's testimony and report credible, its decision is unreviewable. We must defer to the trier of fact on issues of conflicting testimony, credibility of witnesses, and the persuasiveness of the evidence. State v. Walton, 64 Wn. App. 410, 415-16, 824 P.2d 533 (1992).

VI.    GAL Fees

McKay contends that the trial court erred in ordering him to pay two-thirds of the GAL fees. Originally, the family law commissioner ordered Komi to pay two-thirds of the fees and McKay to pay one-third. On revision, the trial court reversed the allocation of fees requiring McKay to pay two-thirds and Komi one-third, "subject to revision at trial." McKay argues that the trial court's failure to modify the allocation following trial violated RCW 26.12.175(1)(d), which permits the court to allocate the fees "according to [the parties'] ability to pay."

Although McKay disputed the amount at trial, he submitted evidence indicating that he had substantially more funds in bank accounts than did Komi. Consequently, even though Komi had a slightly higher net income, there was evidence in the record that McKay had significantly more liquid assets to pay the GAL fees. McKay fails to demonstrate that the trial court failed to consider the parties' ability to pay when allocating the GAL fees or otherwise erred in not modifying the allocation following trial.

McKay's briefs contain numerous additional allegations of trial court error. Because McKay fails to support these conclusory allegations with legal argument, citation to relevant authority, or accurate references to the record, we decline to consider them.

VII.    Attorney Fees on Appeal

McKay, who has represented himself on appeal, has requested an award of costs and statutory attorney fees. See RAP 14.3. Because he is not the prevailing party on appeal, the request is denied. RAP 14.3. Komi's request for attorney fees based on a frivolous appeal is also denied. See RAP 18.9(a).

Affirmed.

WE CONCUR:

-12-