IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| In the Matter of the Marriage of: | ) | No. 81623-3-I |
| | ) | |
| KATELYNN SKYLAR ROBERTS, | ) | DIVISION ONE |
| | ) | |
| Respondent, | ) | UNPUBLISHED OPINION |
| | ) | |
| v. | ) | |
| | ) | |
| CHAD MICHAEL ROBERTS, | ) | |
| | ) | |
| Appellant. | ) | |
| | ) | |

HAZELRIGG, J. — Chad Michael Roberts seeks reversal of an order denying his motion to adjust child support, arguing that the superior court abused its discretion in declining to decrease the agreed child support payment in light of his significant reduction in income. Because it appears from the record that the court considered all relevant factors and reasonably determined that the amount of child support should not decrease, we affirm and grant an award of reasonable attorney fees to Katelynn Skylar Roberts.

FACTS

Katelynn Skylar Roberts and Chad Michael Roberts married on September 9, 2011 and had two children together. Their marriage was dissolved on November 16, 2017. At the time of the divorce, Chad[1] worked at the British

---

[1] For clarity, we refer to the parties by their first names. We intend no disrespect.

Petroleum Cherry Point Refinery in Whatcom County; earning a net monthly income of $9,836. The court imputed a monthly income of $1,682 to Katelynn, who worked as a stay-at-home parent. The final divorce and child support orders reflected an agreement of the parties reached via mediation.

The child support order provided that Chad would pay child support of $2,413 per month. The order specified that the upward deviation from the standard calculation was warranted because Chad had irregular income from overtime work, and "[t]he parties agreed on this sum so [the] Petitioner would not have to work until the youngest child attends school full-time." The court did not order a specific periodic adjustment schedule, but the order provided that "[c]hild support may be changed according to state law."

The court also found that spousal support was warranted because Katelynn was in need of support and Chad had the ability to pay. Chad was ordered to pay spousal support in the amount of $2,412.50 per month until their youngest child began attending school full-time, at which point the maintenance due "shall decline to $1,800 per month and then by an additional $500.00 per month every six months thereafter until it reaches zero." The final divorce order also stated that "[c]hild support shall not be recomputed until spousal maintenance reaches zero."

On January 8, 2020, Katelynn filed a motion for a contempt hearing, alleging that Chad had not been making his court-ordered child support or spousal maintenance payments in full since April 2019. In response, Chad filed a petition to modify the child support order and a motion to terminate maintenance. In an accompanying declaration, Chad asked the court not to find him in contempt

because his financial situation had changed and "none of [his] actions were in bad faith." The court found Chad in contempt and entered a judgment for past due child support and spousal maintenance. The court did not address Chad's motions but ordered that contempt could be purged if Chad complied with the payments as ordered in the final orders and made "a good faith effort to become current in his support."

On March 2, 2020, Chad filed a motion to adjust the child support order and an amended motion to terminate maintenance to correct a clerical error in his previous motion. He stated in a declaration that he had been fired from his job at the refinery in March 2019 because of his alcohol addiction but had obtained new full-time employment soon after, although he made significantly less money. He argued that he had continually made at least partial child support payments and had withdrawn money from his 401k retirement account to continue making support payments. Chad explained that, when he agreed to the final orders, he did not "take into account the fact that circumstances could change" and it had not "occurred to [him] before that [he] might not always be able to pay almost $5,000 a month" in support. His proposed child support worksheet showed that his current monthly net income before paying his support obligations was $3,955.62. The most recent statement of his retirement account in the record showed a vested balance of $96,422.82 at the end of 2016.

Chad also relied on a declaration of his significant other, Tina Mihovilovic, that he had submitted with his initial motion to modify child support. Mihovilovic stated that Chad lives with her in a home that she owns and does not contribute to

the household expenses due to the "dire state" of his finances. When Chad was fired from the refinery, Mihovilovic extended her medical, dental, and vision benefits to cover Chad and the two children, and the premiums are paid out of her paycheck. She is also making payments on his medical bills and credit card.

A hearing was held on the motions on May 1, 2020. The court found that the loss of Chad's job and reduction of his income constituted a substantial change in circumstances. Although the court recognized that Chad's job loss was a result of his alcoholism, it declined to find that the reduction in his wages was voluntary or self-imposed. The court ordered a gradual decrease in Chad's maintenance obligation that would result in the termination of maintenance on September 1, 2021. The court denied the motion to adjust child support, noting, "[p]er the Decree of Dissolution, child support shall not be recomputed until maintenance reaches zero." The court also noted in its oral ruling that Chad could "dig into the 401k" if necessary to make the agreed child support payments. Chad filed a motion for reconsideration, which was denied. He appealed the denial of his motions to adjust child support and for reconsideration.

ANALYSIS

I.    Child Support Order

Chad contends that the trial court erred in denying his motion to adjust child support.[2] We review a trial court's decision on a motion to modify child support for

---

[2] Both parties argue that the other's brief does not comply with RAP 10.3. If a party submits a brief that does not comply with the requirements of Title 10 of the Rules of Appellate Procedure, we may choose to return the brief for correction, reject the brief, or accept the brief. RAP 10.7. Although neither party's submissions were in strict compliance with the Rules of Appellate Procedure, the failures were not so egregious as to "exact[ ] a heavy and unwarranted toll on the

abuse of discretion. Choate v. Choate, 143 Wn. App. 235, 240–41, 177 P.3d 175 (2008). "A trial court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds or untenable reasons." In re Marriage of Littlefield, 133 Wn.2d 39, 46–47, 940 P.2d 1362 (1997). When considering "fact based domestic relations issues," the Washington Supreme Court has recognized that "a trial judge is in the best position to assign the proper weight to each of the varied factors raised by the submitted affidavits in a particular case." In re Parentage of Jannot, 149 Wn.2d 123, 127, 65 P.3d 664 (2003) (emphasis omitted). Because "[t]he amount of child support rests in the sound discretion of the trial court[, t]his court will not substitute its own judgment for that of the trial court where the record shows that the trial court considered all relevant factors and the award is not unreasonable under the circumstances." In re Marriage of Fiorito, 112 Wn. App. 657, 664, 50 P.3d 298 (2002).

The purpose of child support is to ensure support adequate to meet the needs of children commensurate with the parents' income, resources, and standard of living, and to equitably apportion that support obligation between the parents. RCW 26.19.001. "Child support is designed with the primary goal of preventing a harmful reduction in a child's standard of living, in the best interests of the children whose parents are divorced." In re Marriage of Mattson, 95 Wn. App. 592, 599–600, 976 P.2d 157 (1999).

---

court's resources" or affect the court's ability to "efficiently and expeditiously [ ]review the accuracy of the factual statements made in the briefs." See Litho Color, Inc. v. Pac. Emp'rs Ins. Co., 98 Wn. App. 286, 305–06, 991 P.2d 638 (1999). We accept the briefs as filed and decline to impose sanctions.

Washington law provides for two different methods of altering a child support order: 1) a full modification action, or 2) an adjustment action. RCW 26.09.170. "A full modification action is significant in nature and anticipates making substantial changes and/or additions to the original order of support." In re Marriage of Scanlon and Witrak, 109 Wn. App. 167, 173, 34 P.3d 877 (2001). By contrast, an adjustment action is narrower in scope and "simply conforms existing provisions of a child support order to the parties' current circumstances." Id. At the time that the motion was decided, RCW 26.09.170 provided for adjustment of a child support order as follows:

> If twenty-four months have passed from the date of the entry of the order or the last adjustment or modification, whichever is later, the order may be adjusted without a showing of substantially changed circumstances based upon . . . [c]hanges in the income of the parents. . . . Either party may initiate the adjustment by filing a motion and child support worksheets.

Former RCW 26.09.170(7)(a)(i), (b) (2019), recodified as RCW 26.09.170(9)(a)(i), (b) (LAWS OF 2020, ch. 227, § 13).

Chad contends that the judge correctly determined that his reduction in income constituted a substantial change in circumstances justifying a reduction in the spousal maintenance owed. However, he argues that the trial court's ruling denying his motion to adjust child support "made the limited relief afforded to Chad by the gradual reduction of maintenance almost meaningless, as Chad was still ordered to pay Katelynn a total of more than he took home in earnings every month." He argues that he "is literally left with no take-home pay after child support and maintenance are paid."

Katelynn responds that former RCW 26.09.170(7)(a) is discretionary and that the court's decision not to adjust child support was within the range of acceptable choices given the facts and the applicable legal standard. She also argues that Chad's reduced income is not dispositive and points out that Chad cohabitates with Mihovilovic, who pays most of the household expenses.

Katelynn has the better argument. The adjustment provision states that "the order <u>may</u> be adjusted," indicating that the decision of whether or not to change the amount of child support due is discretionary rather than automatic. Former RCW 26.09.170(7)(a) (emphasis added). "Where the obligor has other means of paying his or her child support obligation, the trial court has the discretion to enforce the obligation even in the face of a total lack of income." <u>In re Marriage of Blickenstaff</u>, 71 Wn. App. 489, 498, 859 P.2d 646 (1993). Here, it appears from the record that the court considered all relevant factors, including the fact that the child support award was the result of an agreed order, the financial support provided by Chad's partner, and the reduction in the spousal maintenance obligation, and reasonably determined that the amount of child support should not decrease despite the change in Chad's circumstances. We cannot say that the trial court abused its discretion in making this determination.[3]

---

[3] Katelynn also argues that we may affirm on the alternative ground that the final orders entered in this case preclude the modification of support through an adjustment action because they require the allocation of certain expenses to be reconsidered when child support is recalculated. Because we find that the court did not abuse its discretion, we decline to consider this alternate ground for affirmance.

II.     Attorney Fees

Katelynn requests an award of attorney fees on appeal under RAP 18.1(a) and RCW 26.09.140.  The Rules of Appellate Procedure authorize such an award if applicable law provides the right to recover reasonable attorney fees and costs on appeal.  RAP 18.1(a).  On appeal of any proceeding under chapter 26.09 RCW, "the appellate court may, in its discretion, order a party to pay for the cost to the other party of maintaining the appeal and attorneys' fees in addition to statutory costs."  RCW 26.09.140.  "To award attorney fees on appeal, we 'examine the arguable merit of the issues on appeal and the financial resources of the respective parties.'"  In re Marriage of Mansour, 126 Wn. App. 1, 17, 106 P.3d 768 (2004) (quoting In re of Marriage of Griffin, 114 Wn.2d 772, 779, 791 P.2d 519 (1990)).

Katelynn contends that she is entitled to an award of fees because the issues raised by Chad on appeal are without merit, the disparity between the parties' incomes is significant, and his brief violates the Rules of Appellate Procedure.  Chad disagrees, arguing that he is in a position of "extreme financial hardship," that he has already been ordered to pay Katelynn a significant sum in attorney fees and past due support, and that the issues raised on appeal are "clearly meritorious."

Katelynn complied with the requirements of RAP 18.1(b) by devoting a section of her brief to the request for fees and timely submitting a financial affidavit, which showed a net monthly income of $1,270.42, excluding child support and maintenance.  She estimated that Chad's net monthly income before paying support and maintenance is $3,955.62 based on the most recent proposed child

support worksheet that he submitted in superior court. However, she disputed the accuracy of this number, arguing that it did not account for hours worked "at the premier rate of $48.57 per hour" or the fact that Chad's partner pays many of his expenses. Chad did not file a responsive affidavit. At this time, Chad's monthly child support and maintenance owed is $2,913. His counsel is handling this appeal pro bono.

Although we find no abuse of discretion, Chad presented an arguable issue on appeal. However, considering the financial situations of both parties, we grant Katelynn's request for attorney fees on appeal and set the matter before a commissioner of this court for determination of an appropriate award.

Affirmed.

WE CONCUR:

Andrus, A.C.J.