IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In the Matter of the Marriage of: | ) | No. 40177-4-III |
| | ) | |
| JENNIFER ILG, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | UNPUBLISHED OPINION |
| and | ) | |
| | ) | |
| RONALD ILG, | ) | |
| | ) | |
| Appellant. | ) | |

LAWRENCE-BERREY, C.J. — Ronald Ilg, a federal prisoner, appeals the trial court's order setting his child support at $1,500 per month. Citing RCW 26.09.320, he argues the trial court erred in not setting his support obligation at $10 per month. Because substantial evidence supports the trial court's finding that he has access to substantial wealth, we affirm.

FACTS

On June 19, 2020, Jennifer Ilg filed for divorce against Ronald Ilg. They had one child who was two years old at the time.

Ronald[1] sat for a deposition in 2022. In that deposition, he gave his base salary as a physician as $315,000 per year plus a bonus that he could not estimate or recall specific numbers for. He also could not recall specifically how much he was paid for extra work he did in Montana or how much severance pay he was given after his employment was terminated. He could not recall the present value of his Spokane home or the balance remaining on his mortgage. He also claimed that he could not rent his house because his other former wife, Correna Cockrill, was currently living there. Ronald could not recall the last time he made a child support payment for a child from a previous marriage.

Ronald claimed to speak with Ms. Cockrill regularly and that she was his power of attorney. He claimed not to know how much was owed on the mortgage on his cherry orchard property. He also claimed not to know how many bank accounts he has. He claimed he was unable to discuss his finances with Ms. Cockrill because the prison phones are recorded and not private.

In 2023, Ronald filed a proposed child support schedule worksheet where Jennifer's child support obligation was calculated at $830.00 per month and Ronald's was $50.00 per month. Ronald did not list any estimated present values for real estate,

---

[1] Because the parties share a last name, we use their first names. We mean no disrespect.

investments, vehicles and boats, bank accounts and cash, or retirement accounts. He wrote:

> Dr. Ilg is currently in federal prison and was sentenced to 8 years in January 2023. Dr. Ilg has no income at the moment and has not had income since 2020. It is unknown what Dr. Ilg's earning potential may be once he is released from prison.
>
> . . . .
>
> As Dr. Ilg is incarcerated, he asks that the Court temporarily reduce child support to $10.00 a month. Dr Ilg is requesting for an abatement under RCW 26.09.320.

Clerk's Papers (CP) at 16.

In support of her former husband, Ms. Cockrill submitted a declaration to the court. She indicated she "handle[d] all of the maintenance of his banking and retirement accounts in his absence" and "[took] over the maintenance of his primary residence and currently reside within." CP at 18. She paid his mortgage and covered his portion of the debt for Ilg Orchards. She claimed that one of Ronald's bank accounts was down to "a minimal amount of money" and he no longer had "any accounts at Chase anymore as they canceled him as a client." CP at 19. Ms. Cockrill owned the majority of the cherry orchard, and Ronald owned 49 percent. Ms. Cockrill claimed the cherry orchard was a "money loser just about every year." CP at 19.

Jennifer filed a separate proposed worksheet calculating her child support obligation at $416.24 and Ronald's at $979.76. She valued Ronald's real estate assets at $1,000,000.00, his bank accounts and cash at $240,000.00, and his retirement accounts at $1,000,000.00.

Jennifer filed a declaration in conjunction with her worksheet. She recounted that Ronald was imprisoned for trying to have her poisoned and kidnapped, leading to her receiving a protection order for her and her son. She asserted that Ronald had more than $4,000,000.00 in assets, even if his incarceration meant he no longer had a paycheck. She stated Ronald "owns a 3,111 square foot, 5-bedroom, 4.5 bathroom home on 11.65 acres" with "a 1-bedroom full apartment over the garage." CP at 38. She also stated the house and apartment were not currently occupied and estimated that the house could bring in roughly $4,369.00 per month if rented out. She also noted that Ronald owned a 75.85-acre cherry orchard with Ms. Cockrill. She also discussed additional assets owned by Ronald, including a truck and trailer claimed under the orchard for tax purposes, $312,468.45 and $180,000.00 from real property sales, and an unknown quantity of gold. She also accused Ms. Cockrill and Ronald of refusing to cooperate or provide bank statements. According to the Spokane County assessor, Ronald's house had a market value of $1,197,000.00 in 2023.

On June 15, 2023, the superior court commissioner made a ruling on child support. It stated that Ronald "claimed no knowledge about his current financial circumstances" and "was evasive in his deposition as to the value of his assets or his remaining funds." CP at 177. It found, however, that "Mr. Ilg does have assets upwards of and likely exceeding $4,000,000. The largest assets are in the Ameritrade account, his residence . . . in Spokane, [and] his 49% interest in a 75.85 acre orchard . . . in Wenatchee." CP at 177. It also noted that the amount of funds remaining from liquidating about $500,000 in assets remains unclear. It thus concluded that "[i]t is not appropriate for Mr. Ilg to pay the State minimum child support with wealth being utilized for his own needs and to preserve assets for his use upon release from prison." CP at 178. It determined that $1,500 per month was an appropriate amount of child support. It also concluded that Jennifer had successfully rebutted the presumption that Ronald, as an incarcerated person, would not be able to pay his support obligation.

Ronald moved to revise the commissioner's ruling. The superior court denied the motion. The court noted at the hearing for the motion that "I don't think anybody is asking that the funds or the house be sold or anything of that nature, but there is an ability to bring in that type of income." Rep. of Proc. at 72.

Ronald appealed to this court.

ANALYSIS

We review a trial court's decision setting child support for an abuse of discretion. *In re Marriage of Fiorito*, 112 Wn. App. 657, 663-64, 50 P.3d 298 (2002). A trial court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds or untenable reasons. *In re Marriage of Muhammad*, 153 Wn.2d 795, 803, 108 P.3d 779 (2005).

"When a child support order contains language providing for abatement based on incarceration of the person required to pay child support, there is a rebuttable presumption that an incarcerated person is unable to pay the child support obligation." RCW 26.09.320(1). "The department, the payee under the order, or the person entitled to receive support, may rebut the presumption by demonstrating that the person required to pay support has possession of, or access to, income or assets available to provide support while incarcerated." RCW 26.09.320(2)(b). The child support obligation for an incarcerated person who receives an abatement order is $10 per month. RCW 26.09.320(3)(a).

A court may deviate from the standard amount after considering "[p]ossession of wealth, including but not limited to savings, investments, real estate holdings and business interests, vehicles, boats, pensions, bank accounts, insurance plans, or other assets." RCW 26.19.075(1)(a)(vi). A court must provide specific reasons for deviation

in written findings of fact supported by the evidence. *In re Marriage of Bell*, 101 Wn. App. 366, 371-72, 4 P.3d 849 (2000). "Where the obligor has other means of paying his or her child support obligation, the trial court has the discretion to enforce the obligation even in the face of a total lack of income." *In re Marriage of Blickenstaff*, 71 Wn. App. 489, 498, 859 P.2d 646 (1993). "[W]hen calculating child support obligations, nothing requires the trial court to determine income solely on earned income or ignore a parent's other financial resources . . . when one parent is incarcerated." *In re Marriage of Urbana*, 147 Wn. App. 1, 15, 195 P.3d 959 (2008).

Here, we find no error in the trial court's consideration of Ronald's other assets. RCW 26.09.320 allows the incarcerated person's possession of or access to assets to rebut the presumption that an incarcerated person cannot pay child support. Although that statute does not specify what kind of assets are to be considered, RCW 26.19.075 discusses the kind of assets that are considered for the related question of deviating from the standard child support calculation. Those assets, such as real estate, bank accounts, and business interests, are precisely what the trial court considered when making its findings. Ronald may dispute the valuation given to those assets, but he fails to provide an alternate valuation and, given the nature of the assets, it strains credulity to believe they do not represent a substantial amount of wealth. The trial court's rulings, therefore, would not constitute an abuse of discretion.

Ronald makes various unpersuasive arguments why we should nevertheless find an abuse of discretion. The first is that "under Washington law, one cannot be forced to rent out a room in theri [sic] primary residence to pay for child support. Nor can someone be forced to prematurely liquidate a 401K retirement account to pay for child support." Appellant's Br. at 5. This argument fails for two reasons. The first is that he cites to no authority to establish that Washington law holds what he claims. The second is that the court did not order him to rent his home or liquidate his retirement account. The court is explicitly allowed to consider those assets when determining whether to deviate from the standard child support calculations; it is up to Ronald to figure out how to make those payments. That renting his home or liquidating a retirement account might be the simplest way to do so is not the same thing as the court ordering him to take one of those actions.

He next asserts that, as a federal prisoner, he is prohibited from conducting business under 28 C.F.R. § 541.3 (2025). While that regulation does prevent him from "[c]onducting a business; conducting or directing an investment transaction without staff authorization," it does not prevent his power of attorney, Ms. Cockrill, from doing the same. There is nothing in this regulation that would prevent him from authorizing Ms. Cockrill to rent out his property.

He finally asserts that there is no basis in the record for the court's valuation of his assets. Jennifer provided evidence supporting her claims as to Ronald's wealth, whereas Ronald often stated he did not know the status or value of many of his assets. It was not error, therefore, for the trial court to believe Jennifer's version of facts over Ronald's.

The trial court did not abuse its discretion in determining that the rebuttable abatement presumption was overcome nor by departing upward from the presumptive amount an incarcerated person is to pay for child support.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Lawrence-Berrey, C.J.

WE CONCUR:

Staab, J.                    Cooney, J.

9